721 So.2d 1021 (1998)
IBERIA PARISH SCHOOL BOARD, Plaintiff-Appellee,
v.
SANDIFER & SON CONSTRUCTION CO., INC., et al., Defendants-Appellant.
No. 98-319.
Court of Appeal of Louisiana, Third Circuit.
October 28, 1998.
Richard Paul Weimer, Lafayette, Leon Elzer Roy, III, J. Wayne Landry, New Iberia, for Iberia Parish School Board.
William Allen Repaske, New Iberia, for Sandifer & Son Const. Co. Inc., et al.
Milton O'Neal Walsh, Baton Rouge, for Beyt Rish Robbins, Inc.
Terrence L. Brennan, Charles F. Seemann, Jr., Victor Elbert Stilwell, Jr., New Orleans, for Mestayer, Darby & Partners.
Theodore Michael Haik, Jr., New Iberia, for Bellard & Associates, Inc.
Bernard John Williams, Metairie, for Nucor Corporation.
Daniel R. Atkinson, Jr., Baton Rouge, for Commercial Union Ins. Co.
Lawrence Jude Boasso, Metairie, for Travelers Casualty & Surety Co.
Before YELVERTON, SAUNDERS, WOODARD, PETERS and AMY, JJ.
YELVERTON, Judge.
Sandifer & Son Construction Company, Inc. appeals the trial court's summary judgment in favor of Commercial Union Insurance Company. The trial court found that a comprehensive general liability policy issued by Commercial Union did not provide coverage to Sandifer & Son. We reverse and remand for further proceedings.

ESSENTIAL FACTS

(SUMMARY JUDGMENT EVIDENCE)
On July 20, 1987, the Iberia Parish School Board entered into a contract with Sandifer & Son to construct a middle school in New Iberia known as the Belle Place Middle School. As general contractor, Sandifer & Son subcontracted the manufacturing and installation of the roof system to Crawford Manufacturing Company, Inc. Crawford in turn subcontracted the actual construction of the roof to Trey Construction Company. Following completion of the work and final payment, the School Board discovered leaks in the roof. The School Board filed suit. The suit alleged that the roof exhibited numerous *1022 leaks, caused by defective materials and poor workmanship, resulting in unspecified damages to the school.
Sandifer & Son, a defendant, filed a thirdparty demand against Crawford Manufacturing; its successor, Emarc Company, Inc.; and Commercial Union as the insurer of Crawford/Emarc. On Commercial Union's motion, the trial court granted summary judgment, finding that the insurance issued by it to Crawford/Emarc did not provide coverage for the losses claimed.

APPLICABLE LAW
The contracts of insurance were entered into in Texas between a Texas insurance company, Commercial Union, and a business located in Texas, Crawford/Emarc. The loss occurred in Louisiana where and while the Texas insured was doing business with a Louisiana resident, Sandifer & Son.
On appeal, for the first time, Commercial Union asks that Texas law be applied in the interpretation of the policies. Texas law was not introduced nor mentioned in the court below. Commercial Union relied on Louisiana law in support of its motion for summary judgment. The trial court, in its oral reasons for judgment, cited Louisiana decisions and relied entirely on Louisiana law in granting Commercial Union summary judgment. The two Texas cases cited by Commercial Union in its appellate brief suggest that Texas law may be the same as Louisiana law in the interpretation of commercial general liability policies, at least as to the issues before us.
We realize that La.Code Evid. art. 202(A) requires a court to take judicial notice of the laws of every state. However, "[a]bsent a showing of what another state's law is, it will be presumed to be the same as Louisiana's." Williams v. State Farm Mut. Auto. Ins. Co., 524 So.2d 851, 854 (La.App. 3 Cir.), writ denied, 526 So.2d 792 (La.1988); Razzaghe-Ashrafi v. Razzaghe-Ashrafi, 558 So.2d 1368 (La.App. 3 Cir.1990). We will continue to apply Louisiana law to the resolution of this dispute.

OCCURRENCE
Commercial Union issued three successive one-year policies of insurance to Crawford/Emarc. All three are in the record. The first policy was a Texas Multi-Peril Policy with a policy period of 01-07-87 to 01-07-88. The second was a Texas Commercial Package Policy with a policy period of 01-07-88 to 01-07-89. The third was also a Texas Commercial Package Policy with a policy period of 01-07-89 to 01-07-90. The school was substantially completed on March 1, 1989. Sometime after substantial completion and before July 1989, leaks in the roof made their appearance.
In finding that there had been no "occurrence" under the terms of the policy, the trial court relied upon Fredeman Shipyard v. Weldon Miller Contr., 497 So.2d 370 (La. App. 3 Cir.1986) and Swarts v. Woodlawn, Inc., 610 So.2d 888 (La.App. 1 Cir.1992). It found that there was no "occurrence" to trigger coverage where the liability of the insured contractor was based solely on improper construction.
On appeal, Sandifer & Son argues that there is coverage for the claims asserted against Crawford/Emarc pursuant to the products-completed operations coverage. It argues that the only definition of productscompleted operations contained in the policy clearly and unambiguously includes coverage for claims of defective materials and poor workmanship.
Commercial Union argues that there was no "occurrence" that would trigger coverage under any of the three policies. It claims that there are no allegations in the original petition or third-party petition alleging that there was property damage resulting from an accident. In support of its position, Commercial Union emphasizes the language found in the bodily injury and property damage liability section.
In the first policy issued by Commercial Union, the language requiring an "occurrence" reads as follows:

I. COVERAGE C-BODILY INJURY AND PROPERTY DAMAGE LIABILITY
*1023 The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage....
....
"[O]ccurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.
(emphasis supplied)
The second policy and third policy issued by Commercial Union provide as follows:
SECTION I COVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement.
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this Insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS-COVERAGES A AND B. This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period. The "bodily injury" or "property damage" must be caused by an "occurrence". The "occurrence" must take place in the "coverage territory"....
....
SECTION V DEFINITIONS
9. "Occurrence" means an accident including continuous or repeated exposure to substantially the same general harmful conditions.
(emphasis supplied)
We agree that the three policies filed with the motion for summary judgment are occurrence policies. There is sufficient evidence in the record to indicate that the alleged damage occurred when the roof leaked around June 1989. Therefore, the applicable "occurrence" policy would be the third policy with a policy period of 01-07-89 to 01-07-90. The original petition and the third-party claim both claim damages for the defects and deficiencies in the roof itself. We now turn our discussion to whether these allegations sufficiently indicate that there was an "occurrence" under the policy.
"Where the liability of a contractor is based solely on improper construction, courts have refused to find an `occurrence' in insurance policies containing identical or substantially similar definitions of an occurrence." Swarts, 610 So.2d at 890. However, as pointed out in 1 William S. McKenzie and H. Alston Johnson III, Insurance Law and Practice § 183, p. 370, in 15 Louisiana Civil Law Treatise (1996),
Whether there has been an occurrence, however, depends upon whether there has been an accident, not upon the legal cause or consequence of that accident. Defective workmanship or the incorporation of defective materials is an "accident" under the Kendrick analysis. With construction defects, the real issue usually is not whether there has been an "occurrence," but whether there has been property damage during the policy period and, if so, whether the "work" exclusion is applicable. If the roof leaks or the wall collapses, the resulting property damage triggers coverage under an "occurrence" basis policy, even if the sole cause is improper construction and the only damage is to the work performed by the contractor. Whether coverage for such an "occurrence" is excluded by the work, product or other exclusion is a separate, very important inquiry.... On the other hand, the mere existence of a construction defect does not trigger coverage under an "occurrence" basis policy; coverage *1024 is triggered only if the defect causes property damage during the policy term.
The Kendrick analysis referred to in the above quotation came from Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958), a case in which a sewer system installer failed to repair and reconstruct gas lines severed in the performance of his contract with the Town of Jena to install a sewerage collection system. As a result of the installer's acts, an explosion occurred in a residential home when gas entered the residence through seepage into the sewer line. In that case the cause of the property damage was the defective workmanship of the sewer system installer. The defective workmanship allowed the gas to escape, which resulted in the explosion.
Commercial Union claims that there has been no "occurrence" and no allegation of property damage in this case. It claims that the only claimed damage is the defective roof itself. Commercial Union relies on Carpenter v. Lafayette Woodworks, Inc., 573 So.2d 249 (La.App. 3 Cir.1990); Fredeman Shipyard, 497 So.2d 370; and Swarts, 610 So.2d 888. All three cases found that defective workmanship was not an "occurrence" that would trigger policy coverage. All three cases applied the well-settled principle of insurance law that liability policies are not intended to serve as performance bonds. After finding that defective workmanship was not an occurrence-more or less as a matter of law-the three courts then applied the workproduct exclusion clause in the policies to exclude coverage to the insured for repair or replacement of his own defective work or defective product. We are left uncertain as to what the real basis for the finding of non-coverage was. We prefer to utilize the approach suggested by Professors McKenzie and Johnson quoted above.
Under the terms of the present Commercial Union policy, an "occurrence" is an "accident including continuous or repeated exposure to substantially the same general harmful conditions." The roof leaked. That was an accident or "occurrence." The roof leaked allegedly because improper construction caused damage to it and made it leak. As a result, the roof had to be replaced. As with the gas escaping in the Kendrick case, there are allegations in our present case that defective workmanship and defective materials caused continuous exposure to rain at the school, which caused the roof to leak. This allegedly resulted in property damage because the roof had to be replaced. This allegedly improper construction causing damage to the roof triggered an "occurrence" under the terms of the present policy.
We have found that there was an "occurrence" and that the defect caused property damage during the policy term. The only remaining issue is whether the work-product exclusions apply.

WORK-PRODUCT EXCLUSIONS
Commercial Union contends that even if we find there was an "occurrence" and damage during the policy term, its work-product exclusions in the policies defeat coverage. It claims that any property damage arising out of defective work by the insured or resulting from an unworkmanlike performance is specifically excluded.
In Kidd v. Logan M. Killen, Inc., 93-1322, p. 10 (La.App. 1 Cir. 5/20/94); 640 So.2d 616, 622, the first circuit recognized that numerous cases hold that "a liability policy with a work product exclusionary clause does not provide coverage to the insured for repair or replacement of the contractor's own defective work or defective product." The first circuit then recognized that none of the policies in those cases contained coverage for products-completed operations. Since the court was unable to determine from the incomplete record which provisions in the policy before it addressed the products-completed operations coverage, it reversed the granting of the motion for summary judgment.
Commercial Union does not dispute that the three policies provide products-completed operations coverage. Copies of the three policies in the record indicate that a premium was paid for products-completed operations coverage and that there were limits provided for it.
Products-completed operations coverage has been explained generally as follows:
Any insured who manufactured, sold, handled or distributed goods or products was *1025 exposed to the products hazard, which is [sic] risk of liability arising out of products after they have left the hands of the insured. The completed operations hazard refers to the insured's exposure to liability arising out of completed work performed away from his premises.
McKenzie and Johnson, supra at 379.
In our case products-completed operations coverage was provided by the third policy under the standard provisions of the general liability policy. SECTION VDEFINITIONS, 11(a) of the third policy issued by Commercial Union (which is the same language used in the second policy) provides that "`[p]roducts-completed operations hazard' includes all `bodily injury' and `property damage' occurring away from premises you own or rent and arising out of `your product' or `your work,'" with certain exceptions not applicable here.
Subsections 14 and 15 of SECTION V DEFINITIONS define "your product" and "your work" as follows:
14. "Your product" means:
a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
(1) You;
(2) Others trading under your name; or
(3) A person or organization whose business or assets you have acquired; and
b. Containers (other than vehicles), materials, parts or equipment furnished in connections with such goods or products.
"Your product" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. and b. above.
"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.
15. "Your work" means:
a. Work or operations performed by you or on your behalf; and
b. Materials, parts or equipment furnished in connections with such work or operations.
"Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. or b. above.
In analyzing a comprehensive general liability policy which provided products-completed operations coverage, this court rejected the contention that the coverage for the products hazard was not subject to the workproduct exclusions, finding the policy excluded coverage for damage to the seller's product. Aetna Ins. Co. v. Grady White Boats, Inc., 432 So.2d 1082 (La.App. 3 Cir.1983).
Specific work-product exclusions are found in the general exclusion provisions of the Commercial Union policy in SECTION ICOVERAGE A(2). These exclusions are applicable to the products-completed operations coverage. The only exclusions we find pertinent are k. and l., which exclude:
k. "Property damage" to "your product" arising out of it or any part of it.
1. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
The plain language of this exception to the exclusion renders the exclusion inapplicable when "the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."
John H. Sandifer, President of Sandifer & Son, attested that Crawford/Emarc subcontracted the actual installation of the roof to Trey Construction Company. In Southwest La. Grain, v. Howard A. Duncan, Inc., 438 So.2d 215 (La.App. 3 Cir.), writs denied, 441 So.2d 1224, 442 So.2d 447 (La.1983), this court found that there was product-completed operations coverage for property damage to work performed for the insured by subcontractors. In that case the exclusion language Lof the policy limited the exclusion to "property damage to work performed by the named insured." Id. at 219. A similar result was reached in Korossy v. Sunrise Homes, *1026 Inc., 94-473 through 94-502 (La.App. 5 Cir. 3/15/95); 653 So.2d 1215, writs denied, 95-1522, 95-1536 (La.9/29/95); 660 So.2d 878. The work-product exclusions do not apply on the summary judgment facts of this case.
Finally, quoting to us certain other exclusions recited in the policy for the term 01-07-87 to 01-07-88, Commercial Union argues their application to defeat coverage. We find that these exclusions do not apply for two reasons. First, the policy in effect at the time of this occurrence was the third policy, having a term from 01-07-89 to 01-07-90, not the first policy, having a term from 01-07-87 to 01-07-88. Second, if there are other exclusions that are arguably applicable, they would raise questions of ambiguity because there would be conflict between them and the work-product exclusion exception found in SECTION ICOVERAGE A(2)(l).
The summary judgment evidence does not establish the coverage defense. The summary judgment rendered by the trial court is reversed, and this case is remanded for further proceedings. Costs of this appeal are assessed to Commercial Union.
REVERSED AND REMANDED.
AMY, J., dissents.