# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1400


SUPREME SERVICES AND SPECIALTY CO., INC.

VERSUS

SONNY GREER, INC., ET AL.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 96527-E
HONORABLE KEITH RAYNE JULES COMEAUX, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and J. David Painter, Judges.


**REVERSED AND RENDERED.**

**Richard D. Chappuis, Jr.**
**Voorhies & Labbe**
**P. O. Box 3527**
**Lafayette, LA 70502-3527**
**Telephone:  (337) 232-9700**
**COUNSEL FOR:**
   **Defendant/Appellee - Melvin J. Oubre**

**David W. Groner**
**P. O. Box 9207**
**New Iberia, La 70562-9207**
**Telephone:  (337) 364-3629**
**COUNSEL FOR:**
   **Defendants/Appellants - Sonny Greer, Inc. and Bridgette Greer**

**James Ryan, III**
**James Ryan III & Assoc., LLC**
**201 St. Charles Avenue - Suite 2530**
**New Orleans, LA 70170**
**Telephone:  (504) 599-5990**
**COUNSEL FOR:**
**Defendants/Appellees - AXA Global Risk U.S. Insurance Co.**

**Cynthia J. Thomas**
**Galloway, Johnson, Tompkins, Burr & Smith**
**Three Sanctuary Boulevard - Suite 301**
**Mandeville, LA 70471**
**Telephone:  (985) 674-6710**
**COUNSEL FOR:**
**Defendant/Appellee - Sonny Greer, Inc. d/b/a Sonny Greer Construction Company, Inc.**

**William Lee Melancon**
**Melancon & Associates, L.L.C.**
**900 South College Drive - Suite 300**
**Lafayette, LA 70503**
**Telephone:  (337) 233-8600**
**COUNSEL FOR:**
**Plaintiff/Appellee - Supreme Services and Specialty Co., Inc.**

THIBODEAUX, Chief Judge.

Supreme Services and Specialty Co., Inc. sued Sonny Greer, Inc. to recover for defective work on a construction project. Greer third-partied its commercial general liability provider, AXA Global Risk U.S. Insurance Co., which promptly filed a motion for summary judgment and asserted a lack of coverage. Greer filed its own motion for summary judgment and contended that its insurance policy provided coverage. The trial court determined that the insurance policy did not cover the damages resulting from the alleged defective work-product of the contractor and its subcontractors.

We reverse the judgments of the trial court and render. The subcontractor exception to the work-product exclusion of the insurance contract renders the exclusion inapplicable. Further, the commercial general liability policy provides coverage under its "products-completed operations hazard" provision.

With regard to the motion to strike filed in this court, we decline to strike the appellee brief of the insurer, but we will disregard any references and arguments pertaining to the unpublished decision discussed in and attached to the insurer's appellee brief.

I.

**ISSUES**

We must decide whether the policy of insurance at issue herein provides coverage for the work-product damages claimed by the plaintiff.

II.

**FACTS AND PROCEDURAL HISTORY**

Supreme Services and Specialty Company, Inc. (Supreme) contracted with Sonny Greer, Inc., d/b/a Sonny Greer Construction Company, Inc. (Greer) in

December 1996, for the construction of a commercial building on a lot owned by Supreme. Several subcontractors were involved in the construction project, and in delivering and pouring the concrete for the slab of the building and for the parking lot. Supreme complained of cracks in the concrete slab and parking lot soon after the concrete was poured. Greer cut out a section of the cracked concrete slab and poured a new slab in that section. Supreme continued to complain of cracks in the concrete and drew up a warranty agreement, which Greer and its agents signed.

According to Greer, Supreme continued to complain about the cracks, and Greer made several additional but unsuccessful attempts to satisfy Supreme. The cracks continued to worsen. After completion of the construction project, Supreme filed suit alleging breach of contract and breach of the warranty agreement. Greer filed an answer and a third party demand against its insurer, AXA Global Risk U.S. Insurance Company (AXA), pursuant to a commercial general liability (CGL) policy issued to Greer.

AXA filed a motion for summary judgment alleging that the policy specifically excluded coverage for damages arising out of Greer's work-product. Greer reconvened against AXA seeking a summary judgment declaration that the AXA policy provided coverage for the claims made by Supreme against Greer. The trial court granted AXA's motion for summary judgment and denied Greer's motion for summary judgment. Greer filed this appeal. Greer also filed a motion to strike the appellee brief of AXA wherein AXA attached and argued an unpublished opinion.

While several decisions have been previously rendered in this case by another panel of this court,[1] the only issues now before this panel are the trial court's

_____

[1] In December of 2004, Supreme also appealed the trial court's ruling in favor of AXA. AXA filed a motion to dismiss the appeal alleging that Supreme had never added AXA as a defendant in the main demand and therefore had no standing to appeal the ruling in favor of AXA.

By Judgment dated January 19, 2005, a panel of this court dismissed the appeal of Supreme. Supreme filed an application for rehearing, alleging that it was error to grant AXA's motion to

2

rulings on the motions for summary judgment and our decision on Greer's motion to strike the appellee brief of AXA. For the reasons set forth below, we reverse the trial court's judgments on the summary judgment issues. Additionally, while we decline to strike the appellee brief of AXA, we will disregard any references and arguments pertaining to the unpublished opinion.

## III.

## <u>LAW AND DISCUSSION</u>

### Standard of Review

Appellate courts review grants of summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, that is, whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Ocean Energy, Inc. v. Plaquemines Parish Gov't*, 04-66 (La. 7/6/04), 880 So.2d 1.

### Motion to Strike

Greer contends that AXA has violated Rule 2-16.3 of the Uniform Rules of the Courts of Appeal by arguing and attaching as an exhibit the unpublished decision in *Lafayette Consolidated Government v. Taylor Lumber & Treating, Inc.*, 01-1069 (La.App. 3 Cir. 6/19/02). Greer alleges that AXA states that the case is attached for informational purposes only and then proceeds to argue the legal theories and conclusions in an attempt to persuade this panel to use the logic and reasoning contained therein. Accordingly, Greer seeks to have AXA's appellee brief stricken

---

dismiss Supreme's appeal where Supreme had not had an opportunity to file its opposition to the motion to dismiss.

On May 18, 2005, the panel granted the rehearing and considered the opposition filed by Supreme.

By Judgment dated November 16, 2005, the panel again dismissed the appeal filed by Supreme, finding that Supreme did not sue AXA and therefore had no standing to appeal the summary judgment granted in favor of AXA.

or, in the alternative, requests that we strike the portions of the brief which use the logic set forth in the unpublished decision. The pertinent text of the Rules provide:

> 2-16.3. Publication and Citation
>
> C.    Opinions and dispositions marked "Not Designated for Publication" shall not be cited, quoted, or referred to by any counsel, or in any argument, brief, or other materials presented to any court, except in continuing or related litigation. Opinions marked "Not Designated for Publication" shall be filed in the clerk's office as public records.
>
> 2-12.13. Non-conforming Briefs; Sanctions
>
> Briefs not in compliance with these Rules may be stricken in whole or in part by the court, and the delinquent party or counsel of record may be ordered to file a new or amended brief.

Pursuant to subpart (C) of Rule 2-16.3 above, unpublished opinions and/or writ grants with orders should not be cited, quoted, or referred to, and therefore will not be considered by this court. *See* Uniform Rules—Courts of Appeal, Rule 2-16.3; and *see State v. Williams*, 02-1030 (La. 10/15/02), 830 So.2d 984. However, sanctions are within our discretion pursuant to Rule 2-12.13, and we decline to strike the appellee brief of AXA. We have made it a point not to read the decision complained of, *Lafayette Consolidated Government v. Taylor Lumber & Treating, Inc.*, and shall not refer to it in any way. We will also disregard any references or arguments pertaining to the decision in the brief filed by the third party defendant, AXA.

**Rulings of the Trial Court and Language in the AXA Policy**

In its reasons for judgment in favor of AXA, the trial court stated as follows:

> The issue before the court is whether the "work product" exclusions in the CGL policy exclude coverage to Sonny Greer, Inc. The pertinent exclusion in the policy reads as follows: Property damage to . . [.] (6) that particular part of any property that must be restored,

4

repaired or replaced because "your work" was incorrectly performed on it. 19. "Your work" means: a. work or operations performed by you or on your behalf; and b. Material, parts or equipment furnished in connection with such work or operations.

Upon review, the court concludes that the language of the policy exclusion is clear and unambiguous. A clear reading of the policy can give no other interpretation but that should the plaintiff prevail against the defendant because of faulty workmanship this particular exclusion does exclude the particular work that was incorrectly performed by Sonny Greer on this piece of property. The court does not agree with the opposition argument which asserts that Paragraph L under said subsection "Damage to your Work" creates an ambiguity. The court does not find such ambiguity.

We disagree. Based upon our de novo review of the record in this case, we reverse the judgments of the trial court.

More specifically, the AXA policy provides in pertinent part as follows:

SECTION I - COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.   **Insuring Agreement**.

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

. . . .

b.   This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

(2) The "bodily injury" or "property damage" occurs during the policy period.

. . . .

5

## 2. Exclusions.

This insurance does not apply to:

. . . .

j.      Damage to Property

"Property damage" to:

(1) Property you own, rent or occupy;

. . . .

(5) That particular part of real property on which you *or any contractors or subcontractors* working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . . .

*Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."*
(Emphasis added.)

k.      Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

l.      Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

*This exclusion does not apply if the damaged work or the work out of which the damage arises was*

*performed on your behalf by a subcontractor.*
(Emphasis added.)

SECTION V – DEFINITIONS

. . . .

14. ["Products-completed operations hazard"]

a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

7

(1) The transportation of property . . . .

(2) The existence of tools . . . .

(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

15. "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence["] that caused it.

. . . .

17. "Your product" means:

    a.    Any goods or products, other than real property, manufactured, sold, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

    b.    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

b.     The providing of or failure to provide warnings or instructions.

. . . .

19. "Your work" means:

a.     Work or operations performed by you or on your behalf; and

b.     Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a.     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and

b.     The providing of or failure to provide warnings or instructions.

**Subcontractor Exception to Work-Product Exclusion**

AXA asserts that the above Exclusions in Section I – Coverages, at 2 j, k, and l apply, and that the policy does not cover the work-product of Greer and his subcontractors. AXA relies heavily on *Vintage Contracting, L.L.C. v. Dixie Building Material Company, Inc.*, 03-422 (La.App. 5 Cir. 9/16/03), 858 So.2d 22, which held that almost identical exclusions prohibited coverage. As a threshold matter, we note that *Vintage* has only persuasive potential rather than precedential value as we are not obliged to follow jurisprudence of other appellate circuits. Moreover, as argued at the hearing on the motions for summary judgment, the *Vintage* court did not address the second paragraph of part "l" even though it appears in the opinion. The second paragraph of part "l" states that the *work-product exclusion does not apply to work done by subcontractors* on behalf of the insured. Therefore, it constitutes an exception to the work-product exclusion, and it creates a conflict with part 2 j(5),

which purports to exclude coverage for the work-product of subcontractors as well as the insured.

In *Iberia Parish School Board v. Sandifer & Son Const. Company, Inc.*, 1998-319 (La.App. 3 Cir. 10/28/98), 721 So.2d 1021, a panel of this court reversed summary judgment in favor of the insurer where the policy at issue contained identical language as the AXA policy herein. There, in a landowner's action against a general contractor to recover for a leaking roof, the contractor third-partied the subcontractor and his CGL provider. The subcontractor policyholder had also subcontracted the actual installation of the roof. Therefore, one of the primary issues in *Iberia Parish School Board* was the exception to the exclusion for subcontractor work-product in part "l." After quoting the language in part "l" in full, the panel articulated as follows:

> The plain language of this exception to the exclusion renders the exclusion inapplicable when "the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

*Id.* at 1025.

After finding that the work-product exclusions did not apply on the summary judgment facts of that case, the *Iberia Parish School Board* panel referenced generally other exclusions argued by the insurer and stated that "if there are other exclusions that are arguably applicable, they would raise questions of ambiguity because there would be conflict between them and the work-product exclusion exception found in SECTION I--COVERAGE A(2)(l )." *Id.* at 1026.

Accordingly, we find that the subcontractor exception to the work-product exclusion in part "l" herein renders the exclusion in the AXA policy inapplicable. To the extent that other language conflicts with the exception, the

ambiguity created by the conflict also leads to a finding that the work-product of each subcontractor of Greer is covered under the policy.

**Insured's Work-Product and Products-Completed Operations Hazard**

Greer argues that the policy also provides coverage under the "products-completed operations hazard" provision of the policy. We agree. Greer asserts that the policy's declaration page has a line item under "LIMITS OF INSURANCE," entitled "Products-Completed Operations Aggregate Limit," that Greer paid a proportionate part of the premium for this coverage, and that the coverage applies in this case. We note that the work-product exclusion contained in Section I, part 2 j(6) contains another exception to the work-product exclusion. In a final paragraph it states that the exclusion from coverage in paragraph (6), for property that must be restored, repaired or replaced due to the incorrectly performed work of the insured, *does not apply to "property damage" included in the "products-completed operations hazard."*

Accordingly, under Section V–Definitions, No. 14, "products-completed operations hazard" means property damage occurring away from the insured's premises and arising out of the *insured's* completed work-product. Greer argues that the policy language interpreted in light of the line item contained in the declaration page should be construed to provide coverage. In support of his position, Greer cites *Mike Hooks, Inc. v. JACO Services, Inc.*, 95-1485 (La.App. 3 Cir. 5/8/96), 674 So.2d 1125, *writ denied*, 96-1924 (La. 11/1/96), 681 So.2d 1264.

In the *Mike Hooks* case, the CGL policy at issue again contained almost identical language as that found in the AXA policy herein. There, a dredging company brought suit against an engine repair contractor and its CGL insurer to recover for the contractor's alleged failure to properly perform the work. The trial

11

court granted summary judgment in favor of the insurer based upon work-product exclusions. This court reversed, holding that the policy was ambiguous as to the coverage for products completed operations and therefore had to be construed in favor of coverage. After quoting identical language from the Hooks policy that we cite above in the AXA policy issued to Greer, the panel in *Mike Hooks* stated as follows:

> The policy at issue provides, under the "Limits of Insurance" section on the declarations page, that Acceptance will pay those sums that JACO becomes legally obligated to pay as damages resulting from bodily injury or property damage with a $1,000,000.00 general aggregate limit (other than products-completed operations), as well as $1,000,000.00 products-completed operations aggregate limit. It also provides for a $1,000,000.00 limit for each occurrence.
>
> Acceptance contends that exclusion 2(l) precludes coverage for the harm complained of by Hooks. Exclusion 2(l) provides as follows:
>
> 2. Exclusions.
>
> This insurance does not apply to:
>
> * * * * * *
>
> 1. Damage to Your Work
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operation hazard[.]"
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
>
> . . . .
>
> The policy at issue here, similar to that found in *Kidd* [*v. Logan M. Killen, Inc.*, 93 1322 (La.App. 1 Cir. 5/20/94), 640 So.2d 616], clearly provides $1,000.000.00 [sic] in coverage for *products-completed operations* and then attempts to exclude coverage for this in exclusion 2(1). Aside from the entry in the definition section of the

12

policy for *products-completed operations hazard*, the only reference made to *products-completed operations* coverage is in exclusion 2(l). We are unable to find an unambiguous provision in this policy addressing what the *products-completed operations* coverage, as found on the declarations page, encompasses. As such, we find that the portions of the policy covering *products-completed operations* to be ambiguous. Therefore, we are constrained to interpret these terms in a light favoring coverage.

*Id.* at 1126-28.

In *Iberia Parish School Board*, 721 So.2d 1021, the policy at issue also contained identical language with regard to "products-completed operations hazard" coverage and with regard to accidents and occurrences, as the AXA policy herein. The panel determined that the leaks in the roof, due to defective workmanship and materials, constituted an "accident" and therefore an "occurrence." With regard to identical exclusions and "products-completed operations hazard" coverage, the panel articulated as follows:

> [In] *Kidd v. Logan M. Killen, Inc.*, 93-1322, p. 10 (La.App. 1 Cir. 5/20/94); 640 So.2d 616, 622, the first circuit recognized that numerous cases hold that "a liability policy with a work product exclusionary clause does not provide coverage to the insured for repair or replacement of the contractor's own defective work or defective product." The first circuit then recognized that none of the policies in those cases contained coverage for products-completed operations. Since the court was unable to determine from the incomplete record which provisions in the policy before it addressed the products-completed operations coverage, it reversed the granting of the motion for summary judgment.

*Id.* at 1024. Finding that the policies at issue contained products-completed operations coverage, that a premium was paid for products-completed operations coverage, and that there were limits provided for it, the panel stated:

> Products-completed operations coverage has been explained generally as follows:

> > Any insured who manufactured, sold, handled or distributed goods or products was exposed

13

to the products hazard, which is [sic] risk of liability arising out of products after they have left the hands of the insured. The completed operations hazard refers to the insured's exposure to liability arising out of completed work performed away from his premises.

[William S.] McKenzie and [H. Alston] Johnson, [III, Insurance Law and Practice § 183, p. 379, in 15 Louisiana Civil Law Treatise (1996)].

*Id.* at 1024-25.

In *Iberia Parish School Board*, after citing language identical to that in the AXA policy defining "products completed operations hazard," the panel found that the work-product exclusions applied to products-completed operations coverage but did not apply where there were exceptions to the exclusions. The court focused on exclusions "k" and "l" and particularly on the subcontractor exception in exclusion "l," which was primarily at issue in that case. However, there were references to other exclusions and the ambiguity that would be created if the other exclusions conflicted with the exception to the exclusion for subcontractor work-product.

In the present case, we find that there is again an exception to a work-product exclusion in 2 j(6), which states as follows:

This insurance does not apply to:

(6) That particular part of any property that must be restored, repaired or replaced because *"your work"* was incorrectly performed on it.

. . . .

*Paragraph (6) of this exclusion does not apply to "property damage" included in the products-completed operations hazard[.]"*

(Emphasis added.)

We find that the exception renders the exclusion void as to the work-product of the insured with regard to property damage included in the "products-

completed operations hazard" provision. We further find that Greer paid a premium for and purchased "products-completed operations hazard" coverage, that the section relating to "products-completed operations hazard" coverage is ambiguous as found in *Mike Hooks*, and that the AXA policy therefore must be interpreted in favor of coverage for the work-product of the insured, Sonny Greer, Inc.

IV.

## CONCLUSION

Based upon the foregoing, we decline to strike the appellee brief of AXA, but disregard any references or arguments pertaining to the unpublished decision cited by AXA and attached as an exhibit. We further reverse the judgments of the trial court granting summary judgment to AXA and denying summary judgment to Sonny Greer, Inc. We find that, under the facts of this case, the AXA policy at issue herein provides coverage for the work-product of the insured, Sonny Greer, Inc., and provides coverage for the work-product of the subcontractors of Sonny Greer, Inc. as well.

**REVERSED AND RENDERED.**