NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-377

DAN VEULEMAN, ET UX.

VERSUS

MUSTANG HOMES, LLC, ET AL.

**********

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 37,199
HONORABLE J. CHRISTOPHER PETERS, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese, Judges.

AFFIRMED.

Donald R. Wilson
Wilson & Wilson
P. O. Box 1346
Jena, LA 71342
(318) 992-2104
COUNSEL FOR PLAINTIFF/APPELLANT:
    Dan Veuleman
    Jody Veuleman

**Robert I. Siegel**
**Brendan P. Doherty**
**Daniel G. Rauh**
**Victoria E.  Emmerling**
**Gieger, Laborde & Laperouse, LLC**
**One Shell Square**
**701 Poydras, Suite 4800**
**New Orleans, LA 70139-4800**
**(504) 561-0400**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Granite State Insurance Company**

**PICKETT, Judge.**

Homeowners appeal the trial court's grant of summary judgment and dismissal of their claims against the insurer of their bankrupt home contractor. For the following reasons, we affirm the judgment.

**FACTS**

On August 13, 2009, Dan and Jody Veuleman entered into a contract with Mustang Homes, LLC, for the construction of a "custom home" at 1030 Tousley Drive, Olla, Louisiana, for $293,872.00. Mustang began construction of the home on October 1 but ceased work on November 11, despite the fact that construction of the home was incomplete, and the structure was not habitable. The Veulemans had paid Mustang more than $173,000.00.

Before Mustang ceased work and in response to numerous complaints by the Veulemans to the Mustang representatives regarding the state of the construction, Mustang secured the services of a professional engineer to inspect and report on the status of the construction. In his report, the engineer outlined deficiencies in the construction, including numerous variances from the house plans in the slab construction and inadequate or defective construction of improvements on the slab, some of which resulted from the slab variances.

The Veulemans filed suit against Mustang Homes. Mustang answered the suit with the plea of arbitration and a dilatory exception of prematurity. The exception and the plea were both overruled by the trial court, but this court reversed the trial court's judgment and instructed the trial court to sustain the plea of prematurity and order the parties to submit to arbitration in accordance with contract; the supreme court denied writs. *Veuleman v. Mustang Homes, LLC*, an unpublished writ bearing docket number 10-985 (La.App. 3 Cir. 10/21/10), *writ*

*denied,* 10-2492, 53 So.3d 472 (La. 1/7/11). Before arbitration commenced, Mustang Homes filed for Chapter 7 bankruptcy protection.

The Veulemans then amended their petition to name Granite State Insurance Company (Granite), Mustang's comprehensive general liability (CGL) insurer, as defendant. Granite filed a motion for summary judgment, asserting its CGL policy did not provide coverage for the Veulemans' claims because (1) there was no "occurrence" as defined in policy and (2) the "your product" and "your work" exclusions of the CGL policy excluded coverage for the Veulemans' losses.

The Veulemans opposed the motion and amended their petition to specifically allege the negligence of Mustang and its subcontractors, primarily in the forming, pouring, and construction of the concrete slab on which all other construction was performed.

After oral argument and supplemental briefing, the trial court granted the motion. The Veulemans appealed.

### SUMMARY JUDGMENT

Appellate courts review summary judgments de novo, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Greemon v. City of Bossier City*, 10-2828, 11-39 (La. 7/1/11), 65 So.3d 1263. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

Generally, interpretation of an insurance contract concerns a legal question that can be decided in the framework of a motion for summary judgment. *Cutsinger v. Redfern*, 08-2607 (La. 5/22/09), 12 So.3d 945. Insurance policies are

interpreted according to the general rules of contract interpretation, and liability insurance policies are interpreted to provide, rather than deny, coverage. *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827 (La. 5/22/07), 958 So.2d 634. Notwithstanding, insurers can limit their liability by imposing "reasonable conditions or limitations on their insureds." *Id.* at 638-39. "[U]nambiguous provisions limiting liability must be given effect"; however, the insurer must prove "a loss falls within a policy exclusion." *Id.* at 639.

## DISCUSSION

In its motion for summary judgment, Granite argues its policy does not provide coverage for the Veulemans' claims because (1) there was no "occurrence" as defined in its policy, and (2) even if there was an occurrence, their claims are excepted by the "your product" and "your work" exclusions of its policy. The trial court determined the construction of the slab did not constitute an occurrence under Granite's policy; therefore, it did not provide coverage for the Veulemans' claims.

The Veulemans acknowledge their claims are excluded under the "your work" exclusion but argue the trial court's grant of summary judgment was erroneous under the products-completed operations hazard (PCOH) provision of Granite's policy. They contend the PCOH provides coverage for the defective improvements on the slab because the slab was constructed by subcontractors of Mustang.

### *Occurrence*

Granite's policy provides that it insures Mustang for "'bodily injury' and 'property damage' only if: The 'bodily injury' or 'property damage' is caused by an 'occurrence.'" The policy defines "occurrence" as "an accident, including

3

continuous or repeated exposure to substantially the same general harmful conditions."

Once accepted by Louisiana courts, Granite's position was rejected by this court in *Iberia Parish School Board v. Sandifer & Son Constr. Co., Inc.*, 98-319 (La.App. 3 Cir. 10/28/98), 721 So.2d 1021, and has now been rejected by all Louisiana appellate courts and the Louisiana Supreme Court. Continuous exposure to improper or defective construction has since been held to be an occurrence under CGL policies in which "occurrence" is defined as it is in Granite's policy. *See Supreme Servs.*, 958 So.2d 634; *Thibodaux v. Arthur Rutenberg Homes, Inc.*, 04-1500 (La.App. 1 Cir. 12/22/05), 928 So.2d 80; *Broadmoor Anderson v. Nat'l Union Fire Ins. Co. of La.*, 40,096 (La.App. 2 Cir. 9/28/05), 912 So.2d 400, *writ denied*, 05-2462 (La. 3/24/06), 925 So.2d 1239; *Rando v. Top Notch Prop.*, *L.L.C.*, 03-1800 (La.App. 4 Cir. 6/2/04), 879 So.2d 821; *Korossy v. Sunrise Homes, Inc.*, 94-473 through 94-502 (La.App. 5 Cir. 3/15/95), 653 So.2d 1215, *writs denied*, 95-1522, 95-1536 (La. 9/29/95), 660 So.2d 878.

In *Sandifer*, 721 So.2d 1021, the school board sued its general contractor to recover damages that resulted from leaks caused by defective materials and poor workmanship. The general contractor had subcontracted the construction of the roof, and it filed a third-party demand against the subcontractor and subcontractor's CGL insurer. The trial court granted summary judgment in favor of the CGL insurer on the basis that its policy did not provide coverage for the claimed losses because defective workmanship was not an "occurrence." Interpreting the same "occurrence" provision that is at issue here, this court reversed the trial court's grant of summary judgment, explaining continuous

exposure to rain as a result of defective workmanship of the roof with defective materials constitutes an "occurrence":

> The roof leaked. That was an accident or "occurrence." The roof leaked allegedly because improper construction caused damage to it and made it leak. As a result, the roof had to be replaced. . . . This allegedly improper construction causing damage to the roof triggered an "occurrence" under the terms of the present policy.

*Id*. at 1024.

In *Broadmoor*, 912 So.2d 400, continuous exposure to water as the result of a leak due to a subcontractor's faulty workmanship when installing shower pans that caused property damage was determined to be an occurrence. In *Korossy*, 653 So.2d 1215, the owners of homes damaged by excessive differential settlement of foundations sued in redhibition due to faulty construction and defective materials. The court determined the allegations of damage for faulty workmanship which resulted in continuous exposure to conditions that caused property damage was an "occurrence" as provided in the CGL policy.

The Veulemans argue the improvements constructed on their slab are defective as a result of "continuous or repeated exposure" to the defective conditions of the slab. As stated above, "continuous or repeated exposure to conditions" is an "accident" for purposes of an "occurrence," if it resulted in property damage.

> Granite's policy defines "property damage" as:
>
> a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

5

In addition to the slab's defects, which the Veulemans acknowledge are not covered under the policy, the expert's report shows improvements constructed on the slab were improperly installed and must be replaced or removed and reinstalled for the home to be properly completed. The report indicates **some of** the deficiencies in the improvements constructed on the slab resulted, at least in part, from the slab's deficiencies.

At oral arguments, Granite argued there was no "occurrence" because the property damaged was the property constructed by the defendant. *Korossy* rejected this argument, explaining "the definition of occurrence in this case does not exclude damages caused by improper construction or defective workmanship, although coverage for such may be obviated by the exclusions [in the policy]." *Id.* at 1225. As in *Korossy*, Granite's policy definition of "occurrence" also does not exclude damages caused by improper construction or defective workmanship.

For these reasons, we find a genuine issue of material fact exists as to whether defects in the improvements constructed on the slab resulted from the defective conditions of the slab and resulted in physical injury or loss of use of those improvements and whether there was an "occurrence" under the terms of Granite's policy.

### Does Granite's Policy Provide Coverage for the Veuleman's Claims?

We now consider whether Granite's policy provides coverage for the damages the Veulemans seek to recover. Granite contends its policy excludes coverage for the damages sought under the policy's work-product exclusions.

The work-product exclusion is defined in the following provisions of Granite's policy:

6

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.

The policy defines "your work," in part, as "Work or operations performed by you or on your behalf." The "Products-completed operations hazard" definition (emphasis added) states it:

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" *except*:

. . . .

(2) *Work that has not yet been completed or abandoned.* However, "your work" will be completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

7

The Veulemans do not address Granite's contention that the "your product" exclusion excludes their claims. Rather, they argue Granite's policy provides coverage for their claims because pursuant to the "your work" exclusion, their claim is excepted from the exclusion. Specifically, they contend the damages they seek are not excluded because the slab was constructed by subcontractors of Mustang, not Mustang employees.

By the plain language of the "your work" exclusion, the property damage must fall within the PCOH for the Veulemans' claims to be excepted from the exclusion. The supreme court explained in *Supreme Services*, 958 So.2d at 641 (citing WILLIAM MCKENZIE & H. ALSTON JOHNSON III, LOUISIANA CIVIL LAW TREATISE: INSURANCE AND PRACTICE LAW, § 198 p. 562 (3d ed. 2006)): the "your work" exclusion applies "only to property within that hazard after the work is completed" and "only to the contractor's work and not to subcontractors."

The Veulemans seek to show their claim is excepted from the "your work" exclusion with the affidavit of Jody Veuleman. In her affidavit, Ms. Veuleman states the slab was constructed by subcontractors as proof that their claim is not excluded from coverage. Granite contends the affidavit is insufficient to establish the slab was constructed by subcontractors, not employees of Mustang.

Ms. Veuleman's affidavit states, in pertinent part:

> On or about October 1, 2009, construction began under the supervision of a single Mustang representative, a Mr. Jay Woitas, who visited the jobsite from time to time in purely a supervisory capacity. All of the workers that I observed, carpenters, framers, roofers, bricklayers, plumbers and electricians were sub-contractors, many of whom were foreigners and apparently spoke little or no English.

Granite asserts these statements are insufficient to defeat summary judgment because the affidavit does not establish Ms. Veuleman had personal knowledge

that Mustang employees did not construct the slab and improvements. Granite further claims the affidavit was insufficient because documents referenced therein were not attached to the affidavit and because the affidavit does not show Ms. Veuleman was competent to testify to the relationship between the construction workers and Mustang.

Louisiana Code of Civil Procedure Article 967(A) requires affidavits opposing summary judgment to "be made on personal knowledge, . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein." *Hibernia Nat'l Bank v. Rivera*, 07-962, pp. 8-9 (La.App. 5 Cir. 9/30/08), 996 So.2d 534, 539 (citations omitted), explained the requirement of personal knowledge in the context of affidavits, stating:

> Personal knowledge means something the witness actually saw or heard, as distinguished from what he learned from some other person or source. The purpose of the requirement of "personal knowledge" is to limit the affidavit to facts which the affiant saw, heard, or perceived with his own senses.

The supreme court addressed Granite's complaint in *Vermilion Corp. v. Vaughn,* 397 So.2d 490, 493 (La.1981) and explained:

> The failure of the opposing affiants to affirmatively show that their statements were made on personal knowledge does not prevent judicial consideration of their affidavits. An affidavit which does not measure up to formal standard is subject to a motion to strike. In the absence of such a motion or other objection, the lack of showing of personal knowledge is waived, unless it is clear from the affidavit itself that it is not based on personal knowledge of the facts.

Nothing in Ms. Veuleman's affidavit shows her statements could possibly be based on personal knowledge. She does not state she was employed by Mustang, had access to its employment records, or obtained knowledge from another source that the persons who performed construction on their home were not employees of

9

Mustang.  Ms. Veuleman merely stated she spoke with Mustang's representative and the bricklayers and the carpenters who worked on their home concerning its construction and nothing more.  For these reasons, we find those portions of Ms. Veuleman's affidavit regarding construction on the home having been performed by subcontractors have not been shown to be based on personal knowledge and cannot be considered by this court in opposition to Granite's motion for summary judgment.

The Veulemans acknowledge their claim fell within the "your work" exclusion of Granite's policy, and they have not established their claims are excepted from the exclusion.  Therefore, Granite is entitled to summary judgment dismissing their claims against it.

## DISPOSITION

For the reasons discussed above, the judgment of the trial court dismissing the Veulemans' claims is affirmed, and costs of this appeal are assessed to Dan and Jody Veuleman.

**AFFIRMED.**

10