958 So.2d 634 (2007)
SUPREME SERVICES AND SPECIALTY CO., INC.
v.
SONNY GREER, INC., et al.
No. 2006-C-1827.
Supreme Court of Louisiana.
May 22, 2007.
*636 James Ryan III & Associates, Timothy Taney Roniger, Carroll Devillier, Jr., James Ryan, III, New Orleans, for Applicant.
Galloway, Johnson, Tompkins, Burr & Smith, Cynthia J. Thomas, New Orleans, Melancon & Associates, William Lee Melancon, Lafayette, The Law Offices of David Groner, David W. Groner, New Iberia, Voories & Labbe, Richard D. Chappuis, Jr., Lafayette, for Respondent.
Laura A. Foggan, John C. Yang, Katherine L. Van Pelt, Kevin Richard Tully, New Orleans, and Howard Carter Marshall, for Complex Insurance Claims Litigation Association Amicus Curiae.
JOHNSON, Justice.
We granted this writ application to address whether the commercial general liability ("CGL") policy at issue provides coverage to the insured for liability arising out of defective work performed by the insured's subcontractor at a construction site. AXA Global Risk U.S. Insurance Company (hereinafter referred to as "AXA"), the contractor's insurer, filed this writ to review the court of appeal's decision in Supreme Services and Specialty Co. Inc. v. Sonny Greer, Inc., 04-1400 (La.App. 3 Cir. 5/3/06), 930 So.2d 1077, which reversed the trial court's granting of the insurer's motion for summary judgment. The trial court held that the CGL policy clearly and unambiguously excluded coverage of faulty workmanship performed by, or on behalf of, the contractor. For the following reasons, we reverse the court of appeal's ruling and reinstate the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY
On December 4, 1996, Supreme Services and Specialty Company, Inc. ("Supreme") contracted with Sonny Greer, Inc., d/b/a Sonny Greer Construction Company, Inc. ("Greer") for the construction of an Oilfield Service Facility in Iberia Parish. Several subcontractors were involved in the construction project,[1] i.e., clearing the site, compacting the area, delivering and pouring the concrete for the building's slab and the parking lot. Greer's President, Bridgette Greer, supervised the subcontractors who poured the concrete at this facility. Shortly after the concrete was poured, Supreme complained of cracks in the concrete in both the building and exterior slabs. Thereafter, Greer cut out the cracked sections and poured a new slab in its place. In an effort to satisfy Supreme, Greer signed an agreement which warranted against defects caused by its workmanship in pouring and finishing the concrete. Greer made several attempts to correct the cracking problem; however, the cracks continued to worsen. After the completion of the construction project, Supreme filed suit against its contractor, Greer, and the architect, Melvin J. Oubre, to recover damages resulting from Greer's alleged faulty and defective design and construction of the concrete slabs, arguing breach of contract and breach of the warranty agreement. In response, Greer filed an answer and a third party demand against its insurer, *637 AXA,[2] pursuant to the CGL policy issued to Greer.
Thereafter, AXA filed a motion for summary judgment, arguing that the "work product" exclusion section 1, paragraph 2(1) of the policy expressly excluded coverage for improper construction by the insured's own workers or any of its subcontractors. Greer argued that the language in the policy was identical to the language in the policy in Mike Hooks v. JACO Services, Inc., 674 So.2d 1125 (La. App. 3 Cir.1996), writ denied, 681 So.2d 1264 (La.1996), where the court of appeal found that the CGL policy covered the damages alleged.
The trial court granted AXA's motion for summary judgment and denied Greer's motion for summary judgment, explaining that:
The issue before the court is whether the `work product' exclusions in the CGL policy exclude coverage to Sonny Greer, Inc. The pertinent exclusion in the policy reads as follows: Property damage to..[.](6) that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. 19. "Your work" means: a. work or operations performed by you or on your behalf; and b. Material, parts or equipment furnished in connection with such work or operations.
The trial court concluded that the policy exclusion's language is clear and unambiguous and allows for no other interpretation but that ". . . this particular exclusion does exclude the particular work that was incorrectly performed by Sonny Greer on this piece of property." The trial court rejected Greer's argument that Paragraph L (under said subsection "Damage to your Work") creates an ambiguity. Greer appealed from this ruling.
The court of appeal reversed the trial court's ruling and found that the work performed by Greer and its subcontractors was covered under the CGL policy. Specifically, the court of appeal held that: 1) the "work product" exclusion was inapplicable to the work performed by the subcontractors and 2) the "products-completed operations hazard" (PCOH) provision was ambiguous and should be interpreted in favor of coverage. In reaching this conclusion, the court of appeal distinguished Vintage Contracting, L.L.C. v. Dixie Building Material Company, Inc., 03-422 (La.App. 5 Cir. 9/16/03), 858 So.2d 22, where the court of appeal found that the CGL policy excluded coverage for the damages alleged. The court of appeal concluded that part "l" of the CGL is inapplicable to subcontractors and constitutes an exception to the "work product" exclusion, and creates a conflict with part "(2)(j)(5)," which purports to exclude coverage for the work-product of subcontractors as well as the insured.[3]
In relying on Mike Hooks, Inc. v. JACO Services, Inc., 95-01485 (La.App. 3 Cir. 5/8/96), 674 So.2d 1125, writ denied, 96-1924 (La.11/1/96), 681 So.2d 1264, the court of appeal found that the CGL policy provides coverage under the PCOH provision. It further found that the ambiguity in the *638 "work product" and PCOH exclusions should be interpreted against the insurer. AXA filed a writ application with this Court.
This Court granted AXA's writ application to review and resolve the conflict among the circuits in applying the "work product" exclusion. Supreme Services and Specialty Co. Inc., v. Sonny Greer, Inc., 06-1827 (La.11/9/06), 941 So.2d 28.

DISCUSSION
Standard of Review
This Court has determined that the appellate courts must review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Champagne v. Ward, 03-3211 (La.1/19/05), 893 So.2d 773. Initially, the movant bears the burden of proof. LSA-C.C.P. art. 966(C)(2). If the movant successfully meets this burden, then the burden shifts to the other party to present factual support adequate to establish that he/she will be able to satisfy the evidentiary burden at trial. Richard v. Hall, 03-1488 (La.4/23/04), 874 So.2d 131, 137. If the other party fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment as a matter of law. Id.
In Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750, this Court recognized that:
a "genuine issue" is a "triable issue." . . . "An issue is genuine if reasonable persons could disagree. If . . . reasonable persons could reach only one conclusion, there is no need for a trial on that issue." . . . [A] "fact is `material' when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." Id.

According to LSA-C.C.P. art. 966(B), a motion for summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, show that there is no genuine issue of material fact, and the mover is entitled to a judgment as a matter of law. A court should only grant the motion for summary judgment when the facts are taken into account and it is clear that the provisions of the insurance policy do not afford coverage. Reynolds v. Select, 93-1480 (La.4/11/94), 634 So.2d 1180, 1183.
An insurance policy is a conventional obligation that constitutes the law between the insured and the insurer, and the agreement governs the nature of their relationship. LSA-C.C. art. 1983. An insurance policy is a contract, which must be construed employing the general rules of interpretation of contracts. Reynolds, at 634 So.2d at 1183; LSA-C.C. arts. 2045-2057. If the insurance policy's language clearly expresses the parties' intent and does not violate a statute or public policy, the policy must be enforced as written. However, if the insurance policy is susceptible to two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted in favor of coverage. Reynolds, supra; Newby v. Jefferson Parish Sch. Bd., 99-0098 (La.App. 5 Cir.6/1/99), 738 So.2d 93.
Liability insurance policies should be interpreted to effect, rather than to deny coverage. Yount v. Maisano, 627 So.2d 148, 151 (La.1993). However, it is well-settled that unless a statute or public policy dictates otherwise, the insurers may limit liability and impose such reasonable *639 conditions or limitations upon their insureds. Reynolds, 634 So.2d at 1183; Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d 478 (La.1973); Oceanonics, Inc. v. Petroleum Distributing Company, 292 So.2d 190 (La.1974). In these circumstances, unambiguous provisions limiting liability must be given effect. Jones v. MFA Mutual Insurance Company, 398 So.2d 10 (La.App. 3 Cir.1981); Snell v. Stein, 261 La. 358, 259 So.2d 876 (La. 1972); Niles v. American Bankers Insurance Company, 258 So.2d 705 (La.App. 3 Cir.1972). With that stated, we note that the insurer bears the burden of proving that a loss falls within a policy exclusion. Blackburn v. National Union Fire Ins. Co., 00-2668 (La.4/3/01), 784 So.2d 637, 641.

ANALYSIS
Now, we turn to the language of the subject insurance policy to determine whether the court of appeal erred in finding coverage existed for the damages claimed as a matter of law.
AXA's CGL policy provides, in pertinent part, as follows:
SECTION I  COVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement.
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
. . . .
b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and
(2) The "bodily injury" or "property damage" occurs during the policy period.
. . . .
2. Exclusions.
This insurance does not apply to:. . . .
j. Damage to Property
"Property damage" to:
(1) Property you own, rent or occupy;
. . . .
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . . .
Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."
k. Damage to Your Product
"Property damage" to "your product" arising out of it or any part of it.
1. Damage to Your Work
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." This exclusion does not apply if the damaged work or *640 the work out of which the damage arises was performed on your behalf by a subcontractor.
. . . .
SECTION V  DEFINITIONS
. . . .
14. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
(1) Products that are still in your physical possession; or
(2) Work that has not yet been completed or abandoned.
b. "Your work" will be deemed completed at the earliest of the following times:
(1) When all of the work called for in your contract has been completed.
(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
c. This hazard does not include "bodily injury" or "property damage" arising out of:
(1) The transportation of property. . . .
(2) The existence of tools. . . .
(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.
15. "Property damage" means:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
. . . .
17. "Your product" means:
a. Any goods or products, other than real property, manufactured, sold, distributed or disposed of by:
(1) You;
(2) Others trading under your name; or
(3) A person or organization whose business or assets you have acquired; and
b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
"Your product" includes:
a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and
b. The providing of or failure to provide warnings or instructions.
. . . .
19. "Your work" means:
a. Work or operations performed by you or on your behalf; and

*641 b. Materials, parts or equipment furnished in connection with such work or operations.
"Your work" includes:
a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and
b. The providing of or failure to provide warnings or instructions.
(Emphasis Added.)
Professors McKenzie and Johnson define both the "work product" exclusion and the "PCOH" provision. See, § 186, pp. 512-521 and § 195, at pp. 554-562 in 15 La. Civil Law Treatise (3d ed.2006). The "work product" exclusion reflects the insurance company's intent to "avoid the possibility that coverage under a CGL policy will be used to repair and replace the insured's defective products and faulty workmanship." A CGL policy is not written to guarantee the quality of the insured's work or product. McMath Const. Co., Inc. v. Dupuy, 03-1413 (La.App. 1st Cir.11/17/04), 897 So.2d 677, 682, writ denied, 04-3085 (La.2/18/05), 896 So.2d 40. They also explain that exclusions (2)(j)(5) and (6) apply while the insured's work is in process, i.e., the work is not yet completed. These exclusions apply to any property that must be restored, repaired, or replaced because of the insured's or the subcontractor's faulty workmanship; however, exclusion (j)(6) does not apply to property damages in the PCOH. On the other hand, the PCOH provision, which is outlined in exclusions (2)(k)and (l), applies only to property within that hazard after the work is completed. These provisions apply only to the contractor's work and not to subcontractors. McKenzie, at pp. 561-62.
In reviewing the policy, we note that "work" is defined as those operations performed by Greer (the contractor) and/or the subcontractors, who performed on behalf of Greer. Here, the "work," in question, includes all the work associated with laying the concrete slab performed by Greer and its subcontractors. We find that a reading of the exclusionary language in this liability policy makes it clear that damage to the product itself (the concrete slabs) is excluded from coverage.
In Vintage, the court of appeal specifically held that CGL coverage is excluded when the contractor is required to replace a subcontractor's concrete slab, and damages claimed were consequences of the alleged defective workmanship.[4] The court of appeal also held that the PCOH *642 provision excluded coverage when the contractor's work was not completed when the slab was replaced.
We find that the exclusionary clauses in Vintage are parallel to the provisions in AXA's CGL policy. Similarly, we find that AXA's CGL policy clearly excludes coverage for the damage to the property on which Greer, and/or its subcontractor, worked. Furthermore, the CGL policy excludes coverage to property (concrete slab) that must be repaired or replaced because the work performed by Greer, or on its behalf, was incorrectly performed. Thus, we find that the court of appeal erred in concluding that the CGL provided coverage for the work performed, and that the "work product" exclusion was inapplicable.
With respect to whether there is an inherent conflict between the PCOH clause and the "work product" exclusions in the CGL policy, we must analyze Hooks, supra., where the court found that the CGL policy was ambiguous as it relates to the PCOH exclusion.[5]
Prior to the Hooks' decision, the First, Second, Third, and Fifth Circuits of the court of appeal, as well as the federal district courts of Louisiana, consistently held that the PCOH exclusion applied not to the faulty work itself, but to other damage that might arise from the faulty work. It is for that reason that these circuits have criticized the Hooks' decision.[6]
Hooks can easily be distinguished from the case at hand. Although both cases involve CGL policies which contain somewhat similar provisions, the case sub judice falls squarely within the "work product" exclusion, which precludes coverage for faulty workmanship. In Hooks, JACO's work product  the installation of bearings  i.e., defective work, fractured the crank shaft, which resulted in additional damages and the use of another dredge. Unlike Hooks, in the present case, there is no evidence of any injured third person or product as a result of the damaged property which would have triggered the protection of the PCOH. Thus, this case does not fall within the latter provision, but falls within the "work product" exclusion.
In Joe Banks Drywall & Acoustics, Inc. v. Transcontinental Ins., Co., 32,743 (La. App. 2 Cir. 3/1/00), 753 So.2d 980, the court noted that:
Typically, a commercial liability policy divides the hazards to which a commercial enterprise may be exposed into two categories: (1) hazards arising from an enterprise's operations that are not yet complete and from conditions of the enterprise's premises; and (2) hazards arising from an enterprise's completed work that was done away from the enterprise's premises. . . . Nothing in the policy, however, limits the exclusions discussed above from application to both categories of hazards; and application of the exclusion for property damage to *643 "your work" does not eliminate all risks covered by the products-completed operations coverage.
Id. at p. 985.
The court rejected the holding in Hooks that a PCOH clause was ambiguous when read in conjunction with the "work-products" exclusions of a CGL policy. Instead, the court held that the CGL policy's language unambiguously excluded coverage for construction defects. The court concluded that the CGL policy was not ambiguous, and the policy provided no coverage for the property damage.
Similarly, in Bollinger Shipyards Lockport, L.L.C. v. AmClyde Engineered Products, Inc., 2003 WL 21396773 (E.D.La., 6/11/03), the court rejected the Hooks' decision and held that there was no ambiguity between the "work product" exclusion and the PCOH provision. The court explained that:
The products hazard definition allows generally for coverage to property damage `arising out of' the insured product. The work product exclusion precludes recovery for damage to the product itself. Coverage remains for personal injury and `other property' damage. The purpose of any exclusion is to limit the coverage provided elsewhere in the policy; the fact that this exclusion effectively limits some of the coverage provided does not yield an automatic ambiguity. An argument that a policy provision is `somewhat confusing' does not warrant a finding of ambiguity.
Bollinger Shipyards at 5-6.
In sum, the court explained that based on the above mentioned provisions, "repair and replacement costs for faulty work are excluded, whereas, any damage to other property that may result is included." Id. at 6.
In Iberia Parish School Board v. Sandifer & Son Construction Co., Inc., 98-319 (La.App. 3 Cir.1998), 721 So.2d 1021, the court of appeal held that a "work product" exclusion in a CGL insurance policy did not apply to a leaking roof installed by the insured's subcontractor. This case is easily distinguishable from the case at hand. Iberia involved a leaking roof, caused by defective materials and poor workmanship, resulting in damages to a school. In other words, the situation in Iberia fell squarely within the PCOH category.
We find that a CGL policy containing the "work product" exclusion does not insure any obligation of the policyholder to repair or replace his own defective product. Thus, we agree with the trial court's finding that no coverage is provided by AXA for defective work by Greer and its subcontractors, and that the policy's provisions are unambiguous.
Now, we must determine whether a CGL policy containing a "work product" exclusion and a PCOH provision suffers from inherent ambiguity canceling the work product exclusion when the defective work is performed by a subcontractor, or, whether it creates vagueness or possible room for dual interpretation of the policy.
Louisiana courts have consistently held that the "work product" exclusion eliminates coverage for the cost of repairing or replacing the insured's own defective work or defective product.[7]
*644 McKenzie and Johnson, supra at 510, explains the PCOH coverage as follows:
Any insured who manufactured, sold, handled, or distributed goods or products was exposed to the products hazard, which is the risk of liability arising out of products after they have left the hands of the insured. The completed operations hazard refers to the insured's exposure to liability arising out of completed work performed away from his premises.
This provision can be clearly explained by this example:
Suppose an insured contracted to make and install a sign on a commercial building. After the work was completed, the sign fell due to defective installation, causing damage to the sign, the building's canopy, a parked car, and also bodily injury to a pedestrian. The insurer covering the products-completed operations hazard would cover all claims except the contractor's responsibility to repair and replace the sign, coverage for which would be excluded under the product and work exclusions.
McKenzie and Johnson, fn. 34, p. 521.
In Nash v. Western Cas. & Sur. Co., 406 So.2d 176 (La.App. 1 Cir.1976), the court found that the damage the homeowners sustained as result of fire caused by the contractor's installation of the unvented gas space heater was excluded from coverage where the contractor's CGL policy excluded the PCOH provision. The court noted that the contractor, at the time of fire, had completed his work on the project and did not intend to install vents for the *645 heaters, and the fire occurred about three weeks after the homeowner had given the contractor completion certificate. The court concluded that there was no coverage.
In Aetna Ins. Co. v. Grady White Boats, Inc., 432 So.2d 1082 (La.App. 3 Cir. 1983), the court explained that there is no conflict or ambiguity between the PCOH provision and the "work product" exclusion. In that case, the buyers of a vessel sued the sellers for alleged negligence as the vessel sank in the Gulf of Mexico after striking an oil rig. The court held that there was no coverage for the damages provided to the seller for the damages to the vessel caused by the seller's negligence. The court explained that the definitions portion of the CGL provision was not vague nor ambiguous in defining the "PCOH" provision. The PCOH definition seeks to include protection against bodily injury and property damage liability arising out of operations and also arising out of the named insured's products. The key words in this provision are "arising out of," which could mean "but for" the damaged property the resulting incident would not have occurred. Simply stated, the PCOH applies in two instances: 1) when the damage arises out of defective work and 2) if the damage causes injury to a third party. Neither of these instances is found here.
In reviewing both the "work product" exclusion and the PCOH provision, we find no contradiction in their language. Under the "work product" exclusion, the insured or its subcontractor becomes liable for damages to its work or its product caused by its faulty workmanship. Under the PCOH provision, damages, other than the faulty product or work itself, arising out of the faulty workmanship are covered by the policy. Stated differently, if a subcontractor's faulty electrical work caused the building to burn down before completion, the "work product" exclusion would eliminate coverage for the faulty electrical work performed by the contractor or subcontractor. However, the operations hazard coverage applies not to the faulty work, but damages arising out of the faulty work. Damage to real property arising out of the faulty work (fire damage) would not be excluded as it would be covered under the PCOH provision. The case sub judice involves a claim for damages to the work product itself, i.e. the cracked concrete slab, not a claim arising out of the work and covered by the PCOH provision. Thus, the exception for the work performed on the insured's behalf by a subcontractor under the PCOH damage section of the policy simply is inapplicable to the present case. In other words, the PCOH provision only applies to those injuries which might occur as a result of the damaged product. In the instant case, there is no need to delineate the PCOH provision because there is no other product damaged or third person injured. Here, the only applicable provision is the "work product" exclusion, which applies to work performed by Greer or on its behalf by subcontractors.
For the above reasons, we hold that according to the plain language of the CGL policy, under the "work product" exclusion, there is no coverage for damage to the concrete slab that must be restored, repaired, or replaced because of the defective work or the defective product of Greer and its subcontractors. We find that the PCOH provision is inapplicable in this instance. We further find that there is no inherent ambiguity canceling the "work product" exclusion when the defective work is performed by a subcontractor. We note that the "work product" exclusion applies to both the contractor as well as others acting on his behalf  subcontractors. *646 Therefore, we conclude that the court of appeal erred in granting Greer's motion for summary judgment. We reverse the court of appeal's ruling and reinstate the trial court's ruling.
REVERSED and RENDERED.
KIMBALL and KNOLL, JJ., concur in the result only.
NOTES
[1] The record shows the following subcontractors contributed to this project: 1)Louisiana Excavation Co., Inc.  degrassed and compacted the dirt where the building slab was laid; 2) Sea Shell, Inc.  performed the same services as Louisiana Excavation Co., except it constructed the outside parking and work lots; 3) Louisiana Test & Inspection, Inc.,  inspected the compacting work; and 4) Cajun Concrete Services, Inc.,  poured and finished the concrete for the building slab, while Greer poured and finished the exterior slabs. Angelle Concrete supplied the concrete for both the building and the exterior areas.
[2] AXA is the successor to Colonial Insurance Company, which insured Sonny Greer Construction Co., Inc., pursuant to a Commercial General Liability policy, number CGL 158493, with the effective dates of July 15, 1996 to July 15, 1997.
[3] The court of appeal noted that the Vintage court did not address the language of the CGL policy, which states that the exclusion is inapplicable to subcontractors. The court of appeal relied upon Iberia Parish School Board v. Sandifer & Son Const. Company, Inc., 1998-319 (La.App. 3 Cir. 10/28/98), 721 So.2d 1021.
[4] In Vintage, Joseph Canizaro contracted with Vintage Contracting to construct a new residence in Jefferson Parish. Vintage was required to comply with the architectural drawings, and in connection with the project, Vintage obtained a CGL policy from Maryland Casualty. Vintage, in turn, contracted with Dixie Building to furnish and pour the concrete for the construction of the slab at Canizaro's residence. Because the Project Architect and Engineer refused to certify the slab based on the failure to comply with the contract specifications, the concrete poured by Dixie was removed and replaced at a substantial cost to Canizaro. Vintage made a demand against Dixie for losses suffered as a result of the replaced concrete, but Dixie refused this demand. Then, Vintage made a claim against its CGL policy, asserting that the policy covered the losses sustained by the removal and replacement of the Dixie concrete. However, Maryland Casualty declined coverage under the policy. Thereafter, suit was filed for damages against Maryland.

Vintage filed a motion for summary judgment on the issue of coverage. In response, Maryland filed a motion for summary judgment on the basis that there was no breach of duty by the insurance company, and thus, no liability. The trial court granted Maryland's motion, finding no coverage. Upon appeal, the court held that the "work product" exclusion in the CGL policy excluded coverage and that the PCOH provision in the policy did not provide coverage for the contractor's losses.
[5] In Hooks, a dredging company operating along the Gulf Coast hired JACO to repair and install bearings in the engine on the dredge. An inspection of the work revealed that the majority of the main bearing caps (27 of the 32) were not tightened according to the manufacturer's recommendation, i.e., faulty workmanship. The inspector discovered that one of the bearings had opened up and that the crank shaft was fractured. Mike Hooks sued JACO and its insurer under the CGL policy; the insurer filed a motion for summary judgment denying coverage. The trial court found that the "work product" exclusion precluded recovery of damages resulting from JACO's defective work. However, the court of appeal reversed the trial court's ruling. The court held that the CGL policy was ambiguous as to the coverage under the PCOH; thus, the policy was construed in favor of coverage.
[6] See footnote n. 4.
[7] In Vobill Homes, Inc., v. Hartford Accident & Indemnity Company, 179 So.2d 496 (La. App. 3 Cir.1965), writ denied, 248 La. 698, 181 So.2d 398 (La.1966), a homeowner sued a contractor for defects in his home, and the contractor brought a third-party demand against its insurance company under the CGL policy. The court held the "work product" exclusion, contained within the CGL, precluded coverage for defective work performed by the contractor.

In Swarts v. Woodlawn, Inc., 610 So.2d 888 (La.App. 1 Cir.1992), the homeowners sued the builder for the structural damages discovered once they moved in. In that case, the alleged defects included: separation of sheetrock; cracks in the sheetrock; separation of porch and slab; cracks in the cement; and defects in the doors. After hiring an expert, the homeowners discovered that the residence was built on unstable subsoil, which resulted in severe structural damage to the home. In response to the suit, the insurer filed a motion for summary judgment, where it denied coverage under the work product exclusion. The trial court granted the insurer's motion, holding that the CGL policy precludes coverage for defective construction. The court of appeal held that the work product exclusion barred recovery for the alleged defect in the home arising out of faulty subsurface soil. Also, in Lewis v. Easley, 614 So.2d 780 (La.App. 2 Cir.1993), the court found that the "work product" exclusion precluded coverage for the roof repairs necessitated by faulty workmanship.
In Old River Terminal Co-op v. Davco Corporation, 431 So.2d 1068 (La.App. 1 Cir. 1983), a contractor built a silo facility; after construction, defects appeared indicating severe structural damage. The owners sued the contractor and engineer under its CGL policy, which contained the "work product" exclusion. The contractor argued that the "work product" exclusion did not apply because the damage resulted from an erroneous subsurface survey prepared by a soils engineer-subcontractor, and that it was their reliance on the defective survey, not the workmanship itself, which caused the structural damage. However, the court of appeal held that the "work product" exclusion precluded coverage, noting that whether the structural damage resulted because of bad cement, faulty design or erroneous soil testing, the suit involved the damages for defective construction.
Further, in Allen v. Lawton and Moore Builders, Inc., 535 So.2d 779, (La.App. 2d Cir.1988), the court of appeal held that the "work products" exclusion precluded coverage for the damages suffered by purchasers as a result of the defects in the house and the lot caused by negligent, faulty or defective construction or workmanship of the insured.
See also, Parker v. Dubus Engine Company, 563 So.2d 355, 360 (La.App. 3d Cir.1990); Allen v. Lawton and Moore Builders, Inc., 535 So.2d 779, 781-782, (La.App. 2d Cir.1988); Fredeman Shipyard, Inc. v. Weldon Miller Contractors, 497 So.2d 370, 375; Bacon v. Diamond Motors, Inc., 424 So.2d 1155, 1157; Breaux v. St. Paul Fire and Marine Insurance Company, 345 So.2d 204 (La.App. 3d Cir. 1977).