# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 07-1556

PRIVATE CAPITAL, INC.

VERSUS

J & K ENGINE & RIG REPAIR, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 79632-J
HONORABLE KRISTIAN D. EARLES, DISTRICT JUDGE

**********

**MARC T. AMY
JUDGE**

**********

Court composed of Oswald A. Decuir, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**Frederick T. Haas, III
Montgomery, Barnett, Brown, Read,
Hammond & Mintz, L.L.P.
3200 Energy Centre
1100 Poydras Street
New Orleans, LA   70163-3200
(504) 585-3200
COUNSEL FOR DEFENDANT/APPELLANT:
        Coastal Drilling Co., Inc.**

**Jeffrey Ackermann
Durio, McGoffin, Stagg
and Ackermann
Post Office Box 51308
Lafayette, LA   70505
(337) 233-0300
COUNSEL FOR PLAINTIFF/APPELLEE:
        Private Capital, Inc.**

AMY, Judge.

The plaintiff, an accounts receivable factor, filed suit for recovery of sums allegedly due on an invoice purchased from an oil rig repair business. The defendant refused payment on the invoice, alleging that the work representing the sums due had not been performed. Both parties filed motions for summary judgment. The trial court granted that of the plaintiff, finding that the defendant had waived its right to advance defenses against the plaintiff. The defendant appeals. For the following reasons, we affirm.

## Factual and Procedural Background

Private Capital, Inc. filed suit alleging that, in November 1997, it entered into a Purchase and Security Agreement with J&K Engine and Rig Repairs, Inc. in which it agreed to factor certain accounts of J&K. Under the terms of the agreement, Private Capital would advance seventy percent of a factored account and, upon payment of the invoice by J&K's client, would return the amount of the invoice less a fee determined by the timeliness of the payment.

This case relates to J&K invoice Number 2013, dated May 31, 2002 and issued to Coastal Drilling Company, LLC d/b/a Corpus Christi Drilling and Workover (hereinafter Coastal). The invoice related to work allegedly performed on a Coastal oil rig. It reflected a $174,630.00 balance. J&K assigned the invoice to Private Capital pursuant to its factoring agreement. On the same date that the invoice was issued, J&K forwarded to Coastal a notice of the assignment of the account. The notice, written on J&K letterhead, was signed by Coastal's controller and returned. The notice provides:

> In order to accommodate the changes and growth in our business, we have been fortunate to obtain the services of Private Capital, Inc. and Gisbland Bank and Trust, as a source of additional funding through an assignment of our accounts. The availability of this source will enable

us to serve our customers in a more efficient manner.  Therefore we wish to inform you that payment on all invoices should made [sic] payable to J&K Engine & Rig Repair and mailed to:

Attn:Accounting Department
P.O. Box 52964
Lafayette, LA 70505

The assignment has been duly recorded under Louisiana statutes and under the Uniform Commercial Code.  Please make the proper notations on your ledger and acknowledge the receipt of this letter by signing one copy and then returning to Private Capital, Inc.

*We also ask that you agree that you will not assert any claims or defenses which you may have against J&K Engine & Rig Repair, against Private Capital as assignee.  We agree however that you fully reserve the right to assert against J&K Engine & Rig Repair any claims or defenses, otherwise unassertable against Private Capital, Inc.*

If you have any questions concerning your billing, please contact Private Capital, Inc. . . . upon receipt.  All invoices will be accepted as good and valid, with no right of offset or return, if there is no response to the contrary by your company upon receipt of our invoices.

This notice and instruction remains in full force and effect until you are notified by both the undersigned and Private Capital, Inc. in writing to the contrary.  . . . .

Sincerely,
/s/    Noah Perry

P.S. Please sign one copy of this agreement and return to Private Capital, Inc. by fax as soon as possible. . . .

ACKNOWLEDGED & AGREED BY: /s/ Arlene Adamson
TITLE: Controller
COMPANY: Corpus Christi Drilling & Workover, LLC
DATE: 5-31-02

(Emphasis added.)  Private Capital asserts that, by agreeing to the emphasized paragraph above, Coastal agreed not to assert defenses it may have against J&K, against Private Capital.

Private Capital filed this matter after Coastal refused to pay the invoice due to what it contends was its discovery that certain work represented by the invoice had

2

not been performed. It named Coastal, J&K, and J&K's president, Noah Perry, as defendants. Private Capital obtained a default judgment against J&K and Mr. Perry. Private Capital's right to proceed against Coastal was preserved.

Thereafter, Coastal filed a reconventional demand against Private Capital denying that it entered into a contractual relationship with Private Capital and denying that it agreed to waive defenses to the invoice. It sought damages related to defense of the litigation. Coastal also filed a cross claim and third-party demand against J&K and Noah Perry, seeking indemnification for any judgment rendered against it in the suit by Private Capital.

Private Capital and Coastal filed cross motions for summary judgment. The trial court entered judgment in favor of Private Capital in the amount of $122,241.00, plus interest. The judgment preserved Private Capital's right to pursue the remainder of the sums due under the invoice and its claim for attorney fees. The trial court denied Coastal's motion for summary judgment. After the judgment was designated as a partial final judgment pursuant to La.Code Civ.P. art. 1915(B)(1), Coastal appealed.

Coastal styles its assignments of error as follows:

1. The trial court erred in holding that a unilateral "waiver of defenses" as contemplated by La.R.S. 10:9-403 is valid when secured via an *ex post facto* letter transmitted after all performance was allegedly rendered on a contract which was negotiated five-and-a-half months earlier and which, if not substantially performed at that point in time, would be voidable due to default.

2. The trial court erred in holding that an assignee may avail itself of the quasi holder-in-due course status provided by La.R.S. 10:9-403 when it takes an assignment in violation of its own contractual arrangement with the assignor.

3

3. The trial court erred in failing to consider Coastal's "real" defenses to its alleged obligation on a fraudulently-assigned invoice.

4. The trial court erred in failing to consider that a unilateral "waiver of defenses" as contemplated by La.R.S. 10:9-403 is invalid when obtained through fraud in violation of Louisiana's law on conventional obligations.

5. The trial court erred in failing to consider that a proposal which unilaterally and materially modifies an existing contract of sale between merchants is invalid pursuant to La.Civ.Code art. 2601.

6. The trial court erred in failing to recognize that the rights of an assignee are limited by certain defenses pursuant to La.R.S. 10:9-404.

7. The trial court improperly denied Coastal the opportunity to present its well-pleaded affirmative defenses of fraud, error and mistake.

**Discussion**

*Summary Judgment*

An appellate court reviews summary judgments *de novo*, using the same criteria as the trial court in considering whether the ruling on the summary judgment was appropriate. *Supreme Services v. Sonny Greer, Inc.*, 06-1827 (La. 5/22/07), 958 So.2d 634. According to La.Code Civ.P. art. 966(B), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." We consider Coastal's appeal in light of this standard.

*La.R.S. 10:9-403*

Coastal assigns a number of alleged errors in the granting of the summary judgment. However, the primary question posed by this appeal is whether the waiver

4

of defenses clause, "acknowledged & agreed by" Coastal, is enforceable under La.R.S. 10:9-403. The statute provides, in pertinent part:

**[10:]9-403. Agreement not to assert defenses against assignee**

. . . .

**(b)     Agreement not to assert claim or defense.** Except as otherwise provided in this section, an agreement between an account debtor and an assignor not to assert against an assignee any claim or defense that the account debtor may have against the assignor is enforceable by an assignee that takes an assignment:

(1)     for value;

(2)     in good faith;

(3)     without notice of a claim of a property or possessory right to the property assigned; and

(4)     without notice of a defense or claim in compensation, set-off, or recoupment of the type that may be asserted against a person entitled to enforce a negotiable instrument under R.S. 10:3-305(a).[1]

---

[1]  **[10:]3-305. Defenses and claims in recoupment**

(a) Except as stated in Subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following:

(1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings;

(2) a defense of the obligor stated in another Section of this Chapter or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract; and

(3) a claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.

(b) The right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in Subsection (a)(1),

5

**(c) When subsection (b) not applicable.** Subsection (b) does not apply to defenses of a type that may be asserted against a holder in due course of a negotiable instrument under R.S. 10:3-305(b).

In light of this standard and the evidence presented by the parties in their summary judgment submissions, we find, in sum, that the trial court correctly granted Private Capital's motion as it, as the assignee, took the J&K account for value, in good faith, and without notice of claims or defense. Coastal failed to establish the presence of real defenses pursuant to La.R.S. 10:9-403 and 10:3-305. We turn to discussion of Coastal's specific assignments.

*Waiver*

While Coastal acknowledges that a waiver of defenses clause is contemplated by La.R.S. 10:9-403, it contends that the waiver is effective only if bargained for contemporaneously with the underlying contract between the account debtor and the assignee. Coastal argues that, since the waiver of defenses clause was created at the end of its transaction with J&K, it is unenforceable. We find no merit in this argument.

Although La.R.S. 10:9-403 specifically provides for a waiver of defenses, it does not specifically address the timing of the waiver, and does not suggest limitations to a waiver's enforcement beyond the criteria listed. Its wording is clear and free of ambiguity. *See* La.R.S. 1:4; La.Civ.Code art. 9. Coastal's assertion that the parties must bargain for the waiver of defenses at the time of the underlying contract relates, however, to the fundamental requirement that the "agreement" to waive defenses be valid. Coastal cites to jurisprudence indicating that

_____

but is not subject to defenses of the obligor stated in Subsection (a)(2) or claims in recoupment stated in Subsection (a)(3) against a person other than the holder.

6

"consideration" may be an issue with waivers created after an underlying contract.[2] Instead, we find that the validity of the agreement in this case must be addressed in light of and by reference to La.Civ.Code art. 1966, which requires the existence of a lawful "cause" for an obligation.[3] "Cause" is defined as the reason a party obligates itself. La.Civ.Code art. 1967. As noted by Revision Comment (c), cause is not equivalent to consideration and the reason for a party to bind itself need not be to obtain something in return or to secure an advantage. Rather, a party may even bind itself in favor of another party without advantage for itself in return. *See, e.g.,* La.Civ.Code art. 1910[4] and La.Civ.Code art. 1978[5]. Here, Coastal chose to "acknowledge[] & accept[]" the notice/waiver as part of its ongoing business relationship with J&K. The facilitation of its relationship with J&K, particularly in light of Coastal's desire for conclusion of the project, establishes cause.

This assignment lacks merit.

*Satisfaction of La.R.S. 10:9-403*

Coastal next contests Private Capital's satisfaction of La.R.S. 10:9-403(b)(2)'s requirement that the assignment be taken "in good faith." Coastal argues that Private Capital cannot satisfy the good faith element as it allegedly took the "assignment in

---

[2] *See, e.g., Brookridge Funding Carp. v. Northwestern Human Services*, 175 F.Supp.2d 355 (D.Conn. 2001).

[3] *See* La.R.S. 10:1-103, which provides that: "Unless displaced by the particular provisions of this Title, the other laws of Louisiana shall apply."

[4] **Art. 1910.   Gratuitous contracts**
A contract is gratuitous when one party obligates himself towards another for the benefit of the latter, without obtaining any advantage in return.

[5] **Art. 1978.   Stipulation for a third party**
A contracting party may stipulate a benefit for a third person called a third party beneficiary.
Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement.

7

violation of its own agreement with the assignment." Coastal points to that portion of the factoring agreement between Private Capital and J&K, which provides:

> 7. Representations and Warranties. Seller [J&K Engine and Rig Repairs, Inc.] hereby represents and warrants to Purchaser.
>
> . . . .
>
> e. Each Account assigned and sold to Purchaser [Private Capital] shall be based upon a bonafide sale and actual shipment of the Merchandise or service performed and shall be a valid and enforceable obligation of the customer, with no rights of recoupment, offset or counterclaims or return of merchandise which could reduce the amount of such Account.

Coastal contends that Private Capital was or should have been aware that the invoice at issue, Number 2013, was not representative of a valid and enforceable obligation of the customer with no rights of recoupment, offset or counterclaims. Recall that Coastal contends that J&K had not performed the work reflected on the invoice and points to evidence in the record in support of its claim. However, the ultimate validity of the invoice or the presence of the right of recoupment, offset, or counterclaims is not pertinent to the issue of Private Capital's taking of the assignment in good faith. There is no indication in the record of a lack of good faith on the part of Private Capital. In fact, the portion of the agreement referenced by Coastal indicates that J&K represented and warranted to Private Capital that the factored accounts satisfied the criteria of Section 7(e).

*Real Defenses*

Coastal next references La.R.S. 10:9-403(c), which specifies instances in which an agreement not to assert defenses against an assignee is inapplicable. Subsection (c) provides:

8

**(c)     When subsection (b) not applicable.** Subsection (b) does not apply to defenses of a type that may be asserted against a holder in due course of a negotiable instrument under R.S. 10:3-305(b).

With regard to defenses, La.R.S. 10:3-305 explains:

(a) Except as stated in Subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following:

(1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings;

. . . .

(b) The right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in Subsection (a)(1), but is not subject to defenses of the obligor stated in Subsection (a)(2) or claims in recoupment stated in Subsection (a)(3) against a person other than the holder.

Coastal argues that, under La.R.S. 10:3-305(a), the "real" defenses of illegality of the transaction and fraud are available. Based on the parties' submissions, however, neither is applicable.

While Coastal styles the dispute as one of an illegal transaction or of fraud, the record indicates that Coastal's complaint regarding the invoice is that it included charges for work either not performed or performed unsatisfactorily. A defense arising under La.R.S. 10:3-305(a)(1)(ii), requires "illegality of the transaction which, under other law, nullifies the obligation of the obligor." Coastal has pointed to no provision of law rendering the transaction illegal. Rather it challenges whether J&K performed under its contract as represented. Based on the record, Coastal's challenge does not rise to the level of "illegality of the transaction which, under other law, nullifies the obligation of the obligor." Neither is there evidence that Coastal can

9

maintain a defense for fraud under La.R.S. 10:3-305(a)(1)(iii). The notice and waiver of May 31, 2002 apprized Coastal of the assignment of the account. It was signed and returned by Coastal's controller. The submissions also indicate that Coastal, an oilfield business, used factoring arrangements in its own business and was accustomed to the practice.

This assignment lacks merit.

*Mistake*

Coastal also cites La.Civ.Code art. 1949 in its assertion that the waiver must fail due to mistake. Article 1949 provides: "Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." In support of its argument, Coastal points to testimony from J&K's president indicating that the purpose of forwarding the notice and waiver form was to apprize Coastal of the assignment of the account and from Coastal's managing partner that Coastal would not have signed a waiver requiring it to pay for work not performed. These references, however, do not reveal error vitiating consent pursuant to La.Civ.Code art. 1949. J&K's notice and waiver included specific information pertinent to the assignment and to the waiver. Coastal, familiar with factoring agreements, signed and returned the notice. It did so within the course of an ongoing business relationship.

This assignment lacks merit.

*Louisiana Civil Code Articles 2601 and 2602*

Coastal next argues that the waiver of defenses constituted a unilateral modification of its pre-existing contract with J&K and must fail under La.Civ.Code

10

arts. 2601[6] and 2602[7]. Coastal's argument presumes, however, that any modification

was unilateral. It was not, as Coastal consented to the waiver, without exception or

alteration, when its representative signed and returned the notice and waiver form.

*Recovery under La.R.S. 10:9-404*

In its sixth assignment of error, Coastal asserts that Private Capital's rights, as

assignee, are subject to defenses it could assert against J&K. It cites La.R.S. 10:9-

404, which provides, in part, that:

> **(a) Assignee's rights subject to terms, claims, and defenses; exceptions.** Unless an account debtor has made an enforceable agreement not to assert defenses or claims, and subject to subsections (b) through (e), the rights of an assignee are subject to:
>
> (1) all terms of the agreement between the account debtor and assignor and any defense or claim arising from the transaction that gave rise to the contract; and
>
> (2) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.

---

[6] **Art. 2601.   Additional terms in acceptance of offer to sell a movable**
    An expression of acceptance of an offer to sell a movable thing suffices to form a contract of sale if there is agreement on the thing and the price, even though the acceptance contains terms additional to, or different from, the terms of the offer, unless acceptance is made conditional on the offeror's acceptance of the additional or different terms. Where the acceptance is not so conditioned, the additional or different terms are regarded as proposals for modification and must be accepted by the offeror in order to become a part of the contract.

    Between merchants, however, additional terms become part of the contract unless they alter the offer materially, or the offer expressly limits the acceptance to the terms of the offer, or the offeree is notified of the offeror's objection to the additional terms within a reasonable time, in all of which cases the additional terms do not become a part of the contract. Additional terms alter the offer materially when their nature is such that it must be presumed that the offeror would not have contracted on those terms.

[7] **Art. 2602. Contract by conduct of the parties**
    A contract of sale of movables may be established by conduct of both parties that recognizes the existence of that contract even though the communications exchanged by them do not suffice to form a contract. In such a case the contract consists of those terms on which the communications of the parties agree, together with any applicable provisions of the suppletive law.

11

This assignment, however, is rendered moot by the determination that Coastal "made an enforceable agreement not to assert defenses or claims[.]"

*Affirmative Defenses*

Coastal referred to the invoice as a "fraudulent" document in its answer to Private Capital's petition, yet did not set forth the specific affirmative defenses of fraud, mistake, and error. After the trial court granted Private Capital's motion for summary judgment and denied Coastal's cross-motion, Coastal requested leave to assert affirmative defenses. The trial court denied the request. In its final assignment, Coastal contends this was error. Although it did not list specific, affirmative defenses of fraud, mistake, and error, the record indicates that Coastal made argument and presented evidence regarding these defenses. It has done so again before this court. It did not seek to specifically plead the defenses until after summary judgment was rendered against it. This assignment requires no correction on appeal.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assessed to the appellant, Coastal Drilling Company, L.L.C.

**AFFIRMED.**

12