FREDERICKA HOMBERG WICKER, Judge.
|2In this insurance coverage dispute, the plaintiff/appellant, Anton, Ltd. (Anton) appeals the trial court’s grant of the defendant/appellee’s, Western Heritage Insurance Company (Western Heritage), motion for summary judgment. For the reasons that follow, we affirm.
Factual and Procedural Background
Mr. Anton Heine, the owner of Anton, hired Pascua Roofing and Construction, LLC (Pascua Roofing) — owned and operated by Mr. Dennis Pascua — to replace the roof of the building located at 3121 22nd Street in Metairie, Louisiana where Mr. Heine operated a jewelry and antique store. A few months before starting the job, Mr. Pascua visited Gama Insurance Agency to procure a commercial general liability policy for his roofing operations.
|sMr. Ortiz, the president of Gama Insurance, completed the commercial insurance application online on October 3, 2007, for Mr. Pascua. The nature of business section of the application stated, “installation and repair of shingle[d] roofs, carpentry, installation of drywall, floor covering, tile, wood, interior painting.” Mr. Ortiz then completed an artisan supplemental application on October 6, 2007, in his handwriting, which stated that Mr. Pascua would be engaged in 20% commercial and 80% residential construction work. The supplemental application further stated that $5,000 of employee payroll was allocated to “Roofing-Commercial” and $5,000 was allocated to “Roofing — Residential.” Both parties signed the application. The following caveat appeared next to them signatures, “[t]he applicant understands *419 that submission of this information creates no obligation on the part of the Company to provide insurance on the basis requested or on any other basis.” (emphasis added).
Approximately four to five days after completing the application, Mr. Ortiz called Mr. Pascua and informed him that his application had been approved. Mr. Ortiz received the Western Heritage policy at his office on October 24, 2007. Mr. Ortiz called Mr. Pascua that day and asked him whether he wanted to pick up the policy or whether he should mail it. Mr. Pascua instructed him to mail the policy. Mr. Ortiz mailed the policy, via regular mail, on October 25, 2007, accompanied with a letter instructing Mr. Pascua to read the policy — especially the conditions, limitations, and exclusions. Mr. Pascua testified that he received the policy months after he applied for the insurance and that he did not read the policy upon receipt.
Mr. Pascua began the Anton job on the morning of January 23, 2008. He finished working around 5 P.M., completing only one-third of the job. Expecting rain the following day, Mr. Pascua secured the 2" wide seam that existed between |4the old and new roof membranes with a blue vis-queen tarp. When Mr. Heine arrived at his business the following day, water had leaked through the roof onto the second and first floors of the building. Mr. Heine telephoned Mr. Pascua and informed him of the situation. Mr. Pascua then notified Mr. Ortiz. Mr. Pascua testified that Mr. Ortiz told him “[t]he insurance is going to handle it.” Mr. Ortiz completed a notice of loss form on January 29, 2008.
Anton filed a Petition for Damages against Colony Insurance Company (Colony).[1] Western Heritage, and Pascua Roofing on July 28, 2008 due to damages it sustained. Anton later amended its petition to include Gama Insurance Agency. The petition alleges that Pascua Roofing installed “insufficient and flimsy tarpaulin” on the roof which allowed rain to enter the building and cause Anton’s damage. Anton sued for direct and consequential damages resulting from the negligently inadequate and improper securing of the roof. Western Heritage moved for summary judgment on October 28, 2008 arguing that no coverage existed under the policy because of the “Designated Roofing Operations” exclusion. Mr. Pascua and Mr. Ortiz were deposed prior to the summary judgment hearing.
Mr. Pascua testified that shingled roofs are generally associated with residential operations whereas flat roofs are generally associated with commercial operations. He explained that in order to apply a flat roof, a plastic base sheet must first be installed. Thereafter, a membrane, which comes in a rolled form, must be unrolled and placed over the base sheet. Mr. Pas-cua testified that unrolling the sheet for installation required heating with a torch down. He further testified that based on his experience, the majority of commercial roofs in the New Orleans area were flat roofs.
| sMr. Pascua testified that when he sought coverage for his business, he informed Mr. Ortiz that he would be doing both shingled roofs and flat roofs. Contrary to Mr. Ortiz’s assertion, however, Mr. Pascua testified that he did not allocate a percentage amount between commercial and residential. Rather, he told Mr. Ortiz that he did more shingled roofs than flat roofs. Although he was unable to recall whether he told Mr. Ortiz that he specifically did “torch-down” roofs, he did tell Mr. Ortiz that he did flat roofs. Mr. *420 Pascua also testified that Mr. Ortiz did not ask him whether he used any special equipment, hot tar, or plastic membrane for his roofing operations nor was he told that those types of activities were excluded from coverage. Mr. Pascua further testified that no one from Gama Insurance reviewed the policy with him when it arrived and that he believed he was covered for both shingled and flat roofs because that is what he requested.
Mr. Ortiz testified that Mr. Pascua specifically told him he would be doing 20% commercial and 80% residential construction work. Yet, Mr. Ortiz also stated that Mr. Pascua only sought coverage for shingled roofs. Mr. Ortiz testified that he was unfamiliar with roofing exclusions because he had not sold any roofing policies prior to the one sold to Mr. Pascua. Prior to the issuance of the policy, Mr. Ortiz had Mr. Pascua sign all of the exclusions he received from N-Surance[2] — none of which excluded any type with roofing or roofing procedures. Mr. Ortiz further testified that when the policy arrived on October 24, 2007, he took two hours to read it to familiarize himself with its provisions. This is when he first learned of the roofing exclusions.
Although Mr. Ortiz mailed the policy to Mr. Pascua on October 25, 2007, he testified that he did not know when Mr. Pascua received it, because he did not send it by certified mail. He testified, however, that Mr. Pascua had the Western | r,Heritage policy with him in November of 2007 when he came to Gama Insurance to make his premium payment. Mr. Ortiz testified that Mr. Pascua showed him the policy, told him he had read it, and stated that he had no questions about it.
Western Heritage’s motion for summary judgment was heard on September 21, 2010. The trial court took the matter under advisement and granted the motion on September 24, 2010. Both Colony Insurance and Anton moved for a devolutive appeal.

Standard of Review

Appellate courts must review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Supreme Services & Specialty Co., Inc. v. Greer, 06-1827, p. 4 (La.5/22/07), 958 So.2d 634, 638. (citation omitted). Initially, the movant bears the burden of proof. Id. If the movant successfully meets this burden, then the burden shifts to the other party to present factual support adequate to establish that he/she will be able to satisfy the evidentia-ry burden at trial. Id. (citation omitted). If the other party fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment as a matter of law. Id.
According to La. C.C.P. art. 966(B), a motion for summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, show that there is no genuine issue of material fact, and the mover is entitled to a judgment as a matter of law. A court should only grant the motion for summary judgment when the facts are taken into account and it is clear that the provisions of the insurance 17policy do not afford coverage. Supreme Services, supra, at 638 citing Reynolds v. Select, 93-1480 (La.4/11/94), 634 So.2d 1180, 1183.
If the insurance policy’s language clearly expresses the parties’ intent and *421 does not violate a statute or public policy, the policy must be enforced as written. Id. However, if the insurance policy is susceptible to two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted in favor of coverage. Id. Reynolds, supra; Newby v. Jefferson Parish Sch. Bd., 99-98 (La.App. 5 Cir.6/1/99), 738 So.2d 93.
Liability insurance policies should be interpreted to effect, rather than to deny coverage. Id. (citation omitted). However, it is well-settled that “unless a statute or public policy dictates otherwise, the insurers may limit liability and impose such reasonable conditions or limitations upon their insureds.” Id. at 638-89. (citations omitted). In these circumstances, unambiguous provisions limiting liability must be given effect. Id. (citations omitted). Thus, the insurer bears the burden of proving that a loss falls within a policy exclusion. Id.
Assignments of Error
Both Colony Insurance and Anton have assigned specifications of error in this appeal. Colony Insurance contends that the trial court erred in finding that coverage did not exist under the Western Heritage policy. Anton contends that the trial court erred by finding that no genuine issues of material fact existed as to whether Mr. Pascua received the policy prior to the date of loss; by not finding Gamma to be Western Heritage’s agent; by not finding that Mr. Pascua’s statements were imputable to Western Heritage; and by not finding that Western Heritage’s policy was against public policy.
| ^Preliminarily, we note, as did Western Heritage, that Anton’s second and third assignments of error were not raised at the district court level. Therefore, we will not consider those issues in this appeal.[3]
Discussion

Colony Insurance’s and Western Heritage’s First Assignment of Error

Due to the interrelatedness of the issues, Colony Insurance’s sole assignment of error and Western Heritage’s first assignment of error will be discussed in tandem. The crux of their argument is that the trial court erred in finding that coverage did not exist under the Western Heritage policy because there is a genuine issue of material fact regarding when Mr. Pascua received the policy.
In this case, the “Designated Roofing Operations” exclusion excludes:
All operations by or for “you” in the following:
Flat roof installation or repair; any kind of “hot” application; including, but not limited to, hot tar; hot mop and/or any kind of torch down work; any kind of “membrane” work; any kind of polyurethane, polyvinyl chloride (PVC) or other types of roof work involving plastic materials or products.
There is no dispute that, facially, the exclusion applies to the type of work Mr. Pascua was engaged in when Anton sustained damages. Anton contends, however, that the exclusion is inapplicable because there is a genuine issue of material fact as to whether Mr. Pascua received the policy prior to the date of loss.
One of the cases upon which Anton relies on is Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd’s of London, et al., 616 So.2d 1250 (La.1993). In that case, the Supreme Court held that because the insurer failed to comply with the statute requiring deliv *422 ery of the policy,[4] the insurer could not rely 13on the policy exclusion to deny coverage. Id. at 1253. And in Sims v. Insurance Unlimited of West Monroe, 28,234 (La.App. 2 Cir. 2/28/96), 669 So.2d 709, another case Anton relies upon, the insured did not receive a copy of his policy— which contained a territorial exclusion— until after he was involved in an accident in Mexico. In concluding that the territorial exclusion was inapplicable, the Sims court found the legal principles enunciated in Louisiana Maintenance valid, recognizing that the insurance agent did not discuss with the plaintiff “the exclusions and limitations of the policy he was purchasing.” Id. at 711.
Both Sims and Louisiana Maintenance are distinguishable from the present case. Louisiana Maintenance dealt with nondelivery of a policy which neither the insured nor the agent received prior to the loss. And though not explicitly stated, it is also highly probable that the agent in Sims did not receive the policy prior to the loss.[5]
In this case, however, Mr. Ortiz testified that he received the policy on October 24, 2007. Therefore, the date upon which Mr. Pascua received the policy is inconsequential. La. R.S. 22:873(A) provides, “... every policy shall be delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance.” (emphasis added). In John v. Gourmet Pizzas, Inc., 00-0749 (La.App. 4 Cir. 1/31/01), 778 So.2d 1223, the First Circuit Court of Appeal had to decide whether an agent of the insured was a person entitled to delivery of the policy. To answer that question, the Gourmet Pizzas court relied upon the Supreme Court’s decision in Pruitt v. Great Southern Life Ins. Co., 12 So.2d 261, 262 (La.1942) which stated:
|1(>A delivery of an insurance policy may be actual or constructive. Actual delivery is not essential, unless expressly made so by the terms of the agreement. (emphasis in original). Whether an insurance policy has or has not been delivered after its issuance so as to complete the contract and give it binding effect does not depend upon its manual delivery to, or possession by, insured, but rather upon the intention of the parties as manifested by their acts or words. The test of a sufficient delivery is whether the company or its agent intentionally parts with control or dominion of the policy and places it in the control or dominion of insured or some person acting for him with the purpose of thereby making a valid and binding contract of insurance, (emphasis added).
Gourmet Pizzas, supra, at 1226.
In this case, Mr. Ortiz received the policy on October 24, 2007. Thus, delivery to Mr. Ortiz constituted constructive delivery to Mr. Pascua. “Actual delivery is not essential, unless expressly made so by the terms of the agreement.” Id. Then, Mr. *423 Ortiz mailed the policy to Mr. Pascua on October 25, 2007. By depositing the policy in the mail, Mr. Ortiz “intentionally partfed] with control or dominion of the policy and place[d] it in the control or dominion of the insured.” Id.
An insured has a duty to read its insurance policy and is deemed to know the policy contents. Seruntine v. State Farm Fire and Cas. Co., 10-1108 (La.9/3/10), 42 So.3d 968. Had Mr. Pascua read the policy upon receipt, he would have been apprised of the exclusion that was expressly stated therein. Anton cannot now assert Mr. Pascua’s lack of knowledge about the exclusion to argue that its claim should be covered.

Western Heritage’s Fourth Assignment of Error

In its fourth assignment of error, Anton contends that the Western Heritage policy is against public policy because it fails to provide coverage for any type of commercial roofing operations.
|nAnton cites to Encompass Insurance Company v. Gammon Roofing, L.L.C., 07-1554 (La.App. 4 Cir. 9/24/08), 996 So.2d 16. Anton distinguishes Encompass from the present case noting that in Encompass, the court held that the roofing exclusion was not against public policy because the roofing exclusion was meant to exclude fire damage. Anton contends that this holding is inapplicable here because it sustained water damage. That argument is uncom-pelling.
The Designated Roofing Exclusion in this case does not specify what kind of damage it excludes. It simply states that it excludes any damage resulting from the exact work Mr. Pascua was engaged in. Moreover, the CGL policy in this case does not exclude coverage for all roofing operations. It only excludes those roofing operations which present an unreasonable risk of harm. Because an insurer may “insert in its policies any provisions or conditions required by its plan of insurance or method of operation ...,” we find that the policy is not against public policy. La. R.S. 22:861.
Accordingly, we affirm the judgment of the trial court granting Western Heritage’s motion for summary judgment.

AFFIRMED

. Colony Insurance insured the building where the damages were sustained.

. N-Surance appears to be the insurance broker.

. Uniform Rules — Courts of Appeal, Rule 1-3 provides, "The Courts of Appeal will review only issues which were submitted to the trial court ...”

. La. R.S. 22:873 provides: "Subject to the insurer's requirements as to payment of premium, every policy shall be delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance.”

. In Sims, the insured purchased full automobile insurance on December 21, 1994 in Louisiana; was involved in an automobile accident on December 23 or 24 in Mexico; and filed a claim with his agent on January 4, 1994. The agent informed him on January 9, 1995 that there was a problem with his claim because the policy excluded claims for accidents originating in Mexico. He then received a copy of his policy on January 13, 1995. Considering that the accident occurred within three days of the insurance purchase, it is unlikely that the agent received a copy of the policy prior to the loss.