STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-286

MARY JAMES, ET AL.

VERSUS

IBERIA PARISH SHERIFF'S OFFICE, ET AL.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 125919
HONORABLE VINCENT J. BORNE, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and Candyce G. Perret, Judges.

AFFIRMED.

Samuel David Abraham
Attorney at Law
5040 Ambassador Caffery Parkway
Lafayette, LA 70508
(337) 234-4524
Counsel for Plaintiffs/Appellants:
        Mary James
        Richard James, Jr.
        Sheryl Theodile

James B. Mullaly
Usry & Weeks
1615 Poydras St., Suite 1250
New Orleans, LA 70112
(504) 592-4600
Counsel for Defendants/Appellees:
        Iberia Parish Sheriff Louis M. Ackal
        Sergeant Stoney Penn
        Deputy Jordan Robeaux
        Deputy Eric Bell

**KEATY, Judge.**

Plaintiffs appeal a trial court judgment granting summary judgment in favor of Defendants and dismissing Plaintiffs' claims against them with prejudice. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

This wrongful death and survival action was filed by Mary James, Richard James, Jr., and Sheryl Theodile, the widow and two children, (collectively "Plaintiffs") of Richard James, Sr. (James), who died by suicide on March 12, 2014. Plaintiffs' Petition for Damages named as Defendants the Iberia Parish Sheriff's Office (IPSO),[1] Sergeant Stoney Penn, Deputy Jordan Robeaux, and Deputy Eric Bell (collectively "Defendants"). After Plaintiffs moved to set the matter for trial, Defendants filed a Motion for Summary Judgment seeking to have the case against them dismissed on the following bases: 1) Defendants are statutorily immune from suit pursuant to La.R.S. 9:2798.1 and/or La.R.S. 46:2142; 2) Plaintiffs failed to establish that Defendants owed any duty to them to protect them from the risk of James committing suicide, nor that such duty was breached; and 3) Plaintiffs failed to allege or prove that any action or inaction by Defendants was the factual or legal cause of James' suicide.

Plaintiffs opposed the motion on the basis that the IPSO had "Standard Operating Procedures and Procedural Orders, and Generally Accepted Police Practices and Procedures dealing with mentally ill and barricaded citizens," including "Crisis Intervention protocols," which were allegedly ignored by Sgt. Penn, Dep. Robeaux, and Dep. Bell, all of whom knew that James suffered from mental illness, thus contributing to his death.

---

[1] In Answer to the Petition, Sheriff Louis M. Ackal stated that he had been incorrectly designated as Iberia Parish Sheriff's Office.

Defendants filed a Statement of Uncontested Background Facts as well as a Statement of Uncontested Material Facts. Plaintiffs did not object to those statements of facts. Instead, Plaintiffs submitted that because Defendants admitted to knowing and failing to follow the IPSO procedures regarding how mentally ill and barricaded citizens should be dealt with, their actions amounted to reckless misconduct to which the statutory immunity provisions found in La.R.S. 9:2798.1 and/or La.R.S. 46:2142 do not apply. Moreover, Plaintiffs submitted that the IPSO procedures set out duties that Defendants were bound to follow in interaction with James, who had barricaded himself within the residence and who was known by Defendants to suffer from mental illness. In light of each of the officer/Defendants' admissions that they did not follow those procedures, Plaintiffs submitted that Defendants' actions, and/or inactions, were both the cause-in-fact and the legal cause of James' death.

Given Plaintiffs' lack of objections thereto, we now repeat the Statements of Uncontested Facts contained in Defendants' motion for summary judgment:

## A. UNCONTESTED BACKGROUND FACTS

On March 12, 2014, Sergeant Stoney Penn assisted Deputy Jordan Robeaux, Deputy Eric Bell and Deputy Eric Boyer in serving an eviction notice. *See* Incident Report of Sgt. Stoney Penn, attached as Exhibit 1; Incident Report of Jordan Robeaux, attached as Exhibit 2; Incident Report of Eric Bell, attached as Exhibit 3; Plaintiffs' Petition at ¶ 2. On the eviction notice Mrs. Mary James stated she feels threatened by Mr. James. Exh. 1, 2. Mrs. James advised Mr. James stated he was going to kill her, everyone around and then kill himself. *Id.* Mrs. James advised Mr. James has a .357 magnum. Exhs. 1, 2, 3.

Upon arrival, Deputies spoke with the recipient, who was identified as Mr. Richard James, Sr. Deputies advised Mr. James that his wife filed to evict him and Mr. James was served with the eviction notice. Exhs. 1, 2, 3, Plaintiffs' Petition at ¶ 2.[2]

---

[2] Paragraph 2 of Plaintiffs' Petition alleged that "On or about March 12, 2014, at approximately 6:15 p.m., the decedent, RICHARD JAMES, SR. was served with a Temporary Restraining Order at his home located at 1014 East Pershing Street, New Iberia, Iberia Parish, Louisiana by Deputies Eric Bell, Jordan Robeaux and Stoney Penn of the Iberia Parish Sheriff's Office."

Mr. James was agitated with the situation, but was cooperative with the Deputies. Exh. 1. Mr. James asked, if he wanted to return to the residence to get the rest of his items, what did he need to do. *Id.* Sgt[.] Penn advised Mr. James to call the Sheriff's office and Deputies would return to assist. *Id.* Mr. James then grabbed several articles of clothing and left the residence. Exhs. 1, 2, 3.

Before leaving the residence, Sgt[.] Penn asked Mr. James if he had someone to take care of his dog; he replied that his daughter could care for it. Exh. 1. Sgt[.] Penn contacted Mr. James' daughter and advised her of the situation. *Id.* Sgt. Penn advised Mr. James' daughter that Deputies would place the key in the mail box for her. *Id.*; Plaintiffs' Petition at ¶ 3.

About twenty to thirty minutes after leaving the James residence, dispatch broadcasted that Mr. James was back at his residence and stated he was going to kill himself. Exhs. 1, 2, 3, Plaintiffs' Petition at ¶¶ 4,[3] 5.[4]

Sgt. Penn arrived on scene and Deputy Robeaux and Deputy Bell arrived seconds later. *Id.* Sgt. Penn knocked on the front door with no response. *Id.*

Deputy Robeaux then grabbed the key for the front door from the mail box. *Id.* Sgt. Penn unlocked the door and attempted to open the door with resistance. *Id.* However, Mr. James had barricaded himself in the residence by placing a metal pipe against the door. Exhibit 2; Exhibit 3. Sgt. Penn then pushed on the door once more and the door opened. Exhs. 1, 2, 3.

Mr. James came into sight and Sgt. Penn identified himself. *Id.* Mr. James then yelled, "if y'all want me out, y'all have to come get me out". Sgt. Penn observed Mr. James with a black in color handgun, which was later identified as a .357 revolver pointed at his chest. *Id.* Sgt. Penn advised Mr. James to drop the weapon. *Id.* Before Sgt. Penn could talk any further to Mr. James[,] he then ran toward the bedroom area of the residence. *Id.*

Deputies heard Mr. James yelling really loudly and then heard the sound of a gunshot. *Id.*

---

[3] Paragraph 4 of Plaintiffs' Petition alleged that "At approximately 6:44 p.m. a 911 caller contacted the Iberia Parish Sheriff's office regarding RICHARD JAMES, SR.'s mental state as suicidal and emotionally distraught (crying)[.] They further indicated he had gone into his home alone threatening to kill himself. The 911 caller also had the residence in view and had not expressed any other person was present or in danger."

[4] Paragraph 5 of Plaintiffs' Petition alleged that "At approximately 6:45 p.m., the deputies were informed via radio that RICHARD JAMES, SR. had returned to his home and had made statements to family members that he wanted to kill himself."

Sgt. Penn then ran into the residence with Deputy Robeaux behind him and Deputy Bell behind deputy Robeaux. *Id.* Sgt. Penn rounded the corner of the dining room and entered the hallway. *Id.* Sgt. Penn observed Mr. James lying face down on the hallway floor with the revolver to the right side of his body. *Id.* Sgt. Penn moved the revolver away from Mr. James with his foot so not to contaminate any evidence on the revolver. *Id.*

Sgt. Penn then grabbed Mr. James by the hands and pulled him to an open area of the hallway near the bathroom to start CPR. Sgt. Penn and Deputy Robeaux continued CPR. *Id.* K-9 Deputy Trevor Picard arrived on scene a few minutes later to assist with CPR. *Id.* Deputies continued CPR until Acadian Ambulance medics arrived on scene. *Id.* Mr. James was immediately moved to the ambulance where he was taken to the Iberia Medical Center Emergency Room.

## B. UNCONTESTED MATERIAL FACTS

Plaintiffs' Petition makes clear, and it is uncontested, that on March 12, 2014, Mr. James barricaded himself in a private residence. *See* Exhs. 1, 2, 3, Plaintiffs' Petition, at ¶ 16(p) and (q); *see also* Deposition of Sgt. Penn, attached as Exhibit 5, at 20:2-3, 27:20-24. Plaintiffs' Petition makes clear, and it is uncontested that Mr. James was, and the Defendants knew that Mr. James was armed with a handgun and threatening suicide when he barricaded himself in a private residence. Exhs. 1, 2, 3, Plaintiffs' Petition at ¶¶ 4, 5; *see also* the Temporary Restraining Order, attached as Exhibit 4. The Temporary Restraining Order informed the Defendants that Mr. James was psychotic, suicidal, suffered from hallucinations, and was off of his medications. Exh. 4, p. 2.

Sgt. Penn was the Supervisor on scene. Exh. 5 at 21:7-8. He was the first to arrive on scene. *Id.* at 14:11-12. Sgt. Penn was the one who ultimately decided to enter the residence in which Mr. James had barricaded himself. *Id.* at 33:6-10.

Upon first arriving at the residence, Sgt. Penn and Deputies Robeaux and Bell knocked on the front door of the residence several times, with no response from Mr. James. Exh. 5 at 15:1-15. Sgt. Penn elected to take the key from the mailbox that had been left for Mr. James' daughter to care for the dog and open the front door. *Id.* at 15:11-16:2. After opening the door, the Defendants again attempted to contact Mr. James, to no avail, at which time they pushed the door open further. *Id.*

Once the door was open, Sgt. Penn called out for Mr. James two more times, after which Mr. James appeared from behind a wall. *Id.* at 16:21-25. Mr. James was armed with a revolver, which was pointed at his chest. *Id.* at 17:2-3. The situation evolved rapidly. *Id.* at 17:5-9. Mr. James yelled out "if you want me out, you are going to have to come get me out," then ran away screaming and shot himself. *Id.*

4

Sgt. Penn entered the residence because he thought that Mr. James may have hurt himself and wanted to respond to assist him. *Id.* at 20:6-13. Sgt. Penn's first "priority [was the] preservation of life." *Id.* at 30:13-24.

At the conclusion of a hearing held on November 30, 2018, the trial court granted Defendants' motion from the bench. A written judgment was signed on January 11, 2019, granting Summary Judgment in favor of Defendants and dismissing Plaintiffs' claims against them with prejudice.

Plaintiffs appealed the judgment and are now before this court asserting that the trial court erred in granting summary judgment in favor of Defendants because: 1) La.R.S. 46:2142 "does not provide immunity when officers are not exercising due care;" 2) "La.R.S. 9:2798.1 does not provide immunity for acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct;" 3) La.R.S. 9:2798.1 "does not provide immunity for acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists;" and 4) "because a duty-risk analysis shows Defendants to be liable for the death of Richard James, and summary judgment cannot determine whether Defendants breached the duty they owed."

## LAW

When reviewing a trial court's judgment on a motion for summary judgment, an appellate court employs the de novo standard of review "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law." *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc.,* 06-1827, p. 4 (La.5/22/07), 958 So.2d 634, 638. The burden of proof remains with the movant. La.Code Civ.P. art. 966(C)(2). If the moving party, however, will not bear the burden of proof at trial and shows that "factual support for one or more elements essential to the adverse party's claim, action, or defense" is lacking then the non-moving party must produce "factual support sufficient to establish that he will be able to satisfy his evidentiary

burden of proof at trial[.]" *Id.* If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. *Id.* The motion for summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2).

*Leblanc v. Bouzon*, 14-1041, pp. 2-3 (La.App. 3 Cir. 3/4/15), 159 So.3d 1144, 1146.

"Our inquiry is whether there is any dispute as to material facts, and, if not, is the moving party entitled to judgment as a matter of law. *Id.;* La. C.C.P. art. 966(B)(2)." *Haab v. E. Bank Consol. Special Serv. Fire Prot. Dist. of Jefferson Par.*, 13-954, p. 4 (La.App. 5 Cir. 5/28/14), 139 So.3d 1174, 1178, *writ denied*, 14-1581 (La. 10/24/14), 151 So.3d 609.

Louisiana Revised Statutes 9:2798.1, titled "Policymaking or discretionary acts or omissions of public entities or their officers or employees," provides, in pertinent part:

> B. Liability shall not be imposed on public entities or their officers or employees[5] based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
>
> C. The provisions of Subsection B of this Section are not applicable:
>
> (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
>
> (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

---

[5] "As used in this Section, 'public entity' means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions." La.R.S. 9:2798.1(A).

6

The Temporary Restraining Order (TRO) Defendants served on James on the evening of his death was obtained by his wife under the Protection from Family Violence Act (The Family Violence Act). *See* La.R.S. 46:2135. It directed the IPSO to evict James from 1014 East Pershing Street in New Iberia and it ordered James to stay at least one hundred (100) yards away from that residence. The Family Violence Act provides that "[i]f a law enforcement officer has reason to believe that a family or household member . . . has been abused and the abusing party is in violation of a temporary restraining order . . . issued pursuant to . . . [La.R.S.] 46:2131[-2143], the officer shall immediately arrest the abusing party." La.R.S. 46:2140. The Family Violence Act further provides that:

> Any law enforcement officer reporting in good faith, exercising due care in the making of an arrest or providing assistance pursuant to the provisions of [La.]R.S. 46:2140 and 2141 shall have immunity from any civil liability that otherwise might be incurred or imposed because of the report, arrest, or assistance provided."

La.R.S. 46:2142.

## DISCUSSION

Defendants' motion for summary judgment was supported by five exhibits. Those exhibits consisted of Incident Reports filed by Sgt. Penn, Dep. Robeaux, and Dep. Bell; the deposition of Sgt. Penn; and a Temporary Restraining Order against James obtained by his wife on March 12, 2014, ordering James to vacate and stay at least 100 yards away from the residence located at 1014 East Pershing Street in New Iberia. The following information was noted on the TRO:

> IF NEED BE THE PETITIONER IS REQUESTING A COUPLE OF TRIPS TO HER HOUSE ACCOMPANIED BY THE IBERIA PARISH SHERIFF'S OFFICE IF THE COURT CHOOSES NOT TO EVICT THE DEFENDANT. SHE IS DISABLE[D]. THE PETIONER STATED THAT THE DEFENDANT THREATENS TO KILL HER, HIMSELF OR ANYONE ELSE AROUND HIM DAILY. THE DEFENDANT IS PSYCHOTIC AND EXPERIENCES HALLUCINATIONS, BUT HE REFUSES TO STAY ON HIS DAILY

7

MEDICATION REGIMENTE THAT HIS PERSONAL DOCTOR HAS ASSIGNED TO HIM.

Plaintiffs attached five exhibits to their opposition to Defendants' motion, three of which were the depositions of Sgt. Penn, Dep. Robeaux, and Dep. Bell. The fourth exhibit was a report written by Andrew Scott, III, whom classified himself as an expert in Police Practices and Procedures, wherein he opined that:

> The actions of Sergeant Penn, Deputy Robeaux and Deputy Bell contributed to the death of Mr. James, Sr. by failing to adhere to Iberia Parish Sheriff's Office Procedural Orders and generally accepted police practices and procedures dealing with mentally ill citizens when they forced their way into the premises where Mr. James, Sr. was located.

The items of evidence Mr. Scott reviewed in formulating his opinion regarding the facts submitted to him were listed in his report, as well as in an affidavit he executed, which Plaintiffs filed as an additional exhibit.

At the start of the hearing on Defendants' motion, the trial court explained that it had read, and was familiar with, the evidence filed in support of and in opposition to the matter before it. After entertaining the arguments of counsel, the trial court granted Defendants' motion from the bench, issuing the following oral ruling:

> [T]he first ground for Summary Judgment was pursuant to Louisiana Revised Statutes 9:2798.1, which basically grants immunity to folks such as the deputies when they are in the performance of the course and scope of their employment, which I think is not disputed, and perform policy-making, or discretionary acts, which is kind of the argument that the attorney for the Defendants is making, that obviously when faced with the circumstances that the deputies in question were faced with, they have the discretion to — you know, what path of conduct they are going to take.
>
> The Plaintiff points out that pursuant to a local manual, the Sheriff s manual on circumstances that he argues are similar to this, they should have done A, B C, so they violated a policy.
>
> The attorney for the Defendants point[s] out that those policies, although, you know, present and may or may not have been violated, I don't think is not really a dispute. I think there is some acknowledgment through the depositions, and specifically of Mr. Penn

8

that I reviewed, there may have been some, you know, not strict adherence to the local policy, but that is not what is controlling. The duty imposed by the law that applies to this situation, in essence, state law, and not a local administrative policy. That being the predominant, or overlying restrictor of conduct, it was a discretionary act by an officer in the course and scope of his employment, therefore immunity should render — Excuse me — the provisions of Louisiana Revised Statutes 9:2798.1 should apply in this particular case. I do find that that is the case in this matter and I'll grant Summary Judgment based upon the Court's finding that 9:2798.1 is applicable to this matter.

Based upon that ruling, the Court does not render any opinion as to immunity 46:2142, or any opinion as to the alternate duty-risk analysis that was gone through by the Defendant. I find that under 42:2142, the immunity provision of the protective order, or temporary restraining order statute, basically has an incorporation of the same analysis.

### Immunity under La.R.S. 46:2142

The undisputed facts show that James' wife sought relief under the Family Violence Act because her husband was "PSYCHOTIC AND EXPERIENCES HALLUCINATIONS BUT HE REFUSES TO STAY ON HIS DAILY MEDICATION REGIMENTE THAT HIS PERSONAL DOCTOR HAS ASSIGNED TO HIM." Defendants served James with the TRO evicting him from the residence that he shared with his wife at 6:15pm on March 12, 2014. In conjunction with his eviction, Sgt. Penn inquired about whether someone would be able to care for James' dog. James told Sgt. Penn that his daughter could possibly do so, so Sgt. Penn called James' daughter to let her know about James' eviction and Sgt. Penn told her that he would put a key to the residence in the mailbox. At approximately 6:44pm, which was about twenty to thirty minutes after Defendants left the James's residence, someone called 911 to report that James, whom they described as "suicidal and emotionally distraught (crying)," had returned to the residence. Defendants received a radio call that James "had returned to his home and had made statements to family members that he wanted to kill himself," and they promptly returned to the James's residence.

9

Under the undisputed facts of this case, we conclude that Defendants' actions upon their quick return to the James's residence were rendered "in good faith" and that Defendants were "exercising due care in . . . providing assistance" in conjunction with the eviction that they had performed pursuant to the Family Violence Act less than one hour before. La.R.S. 46:2142. In addition, the depositions of Sgt. Penn, Dep. Robeaux, and Dep. Bell lead us to find that they collectively acted in a manner that was professional, courteous, and compassionate, seeking not to arrest James, as claimed by Plaintiffs in their briefs to this court, but to prevent any loss of life to James or anyone else. Thus, Defendants are "immune from any civil liability that otherwise might be incurred or imposed because of the . . . assistance provided." La.R.S. 46:2142. Moreover, unlike the provisions found in La.R.S. 9:2798.1 that restrict the limited immunity granted therein to "the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts," with the exception of "acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or . . . acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct[,]" the immunity found in La.R.S. 46:2142 need only be exercised "in good faith" and with "due care." Accordingly, we hold that, under the specific facts of this case, the immunity based upon the application of La.R.S. 46:2142 is not lost or waived by Defendants' admitted failure to follow IPSO guidelines regarding barricaded subjects.

Defendants met their burden of proving that they were entitled to judgment as a matter of law finding that they are entitled to the protection of immunity found in the Family Violence Act. Plaintiff's first assigned error lacks merit. Thus, the trial court did not err in granting summary judgment in favor of Defendants and

dismissing the Plaintiffs' suit against them with prejudice. Because we have determined that Defendants were entitled to summary judgment based on the immunity afforded in La.R.S. 46:2142, we need not address Plaintiffs' remaining assignments of error.

## DECREE

For the foregoing reasons, the judgment of the trial court in favor of Defendants, Iberia Parish Sheriff Louis M. Ackal, Iberia Parish Sheriff's Office Sergeant Stoney Penn, Deputy Jordan Robeaux, and Deputy Eric Bell, and against Plaintiffs, Mary James, Richard James, Jr., and Sheryl Theodile, is affirmed. All costs of this appeal are assessed against Plaintiffs.

**AFFIRMED.**